**In re Lynwood T. MOORE, Relator.**

No. 12–03–00290–CV.

Court of Appeals of Texas,
Tyler.

March 24, 2004.

Robert R. Foster, for relator.

Paul T. Fanning, The Law Office of Paul T. Fanning, P.C., Tyler, John Alan Goren, Dallas, for real party in interest.

Randall L. Rogers, Pro se.

Panel consisted of WORTHEN, C.J., SAM GRIFFITH, J., and DeVASTO, J.

## OPINION

SAM GRIFFITH, Justice.

Robert R. Foster ("Foster") asserted his Fifth Amendment privilege during his testimony at a hearing on a motion to disqualify him from representing Lynwood T. Moore ("Moore") in a divorce action. The trial court entered an order disqualifying Foster and disgorging him of all sums in excess of $10,000 that he received as payment for representing Moore. In this original proceeding, Moore, as relator, challenges the trial court's order. We conditionally grant the petition for writ of mandamus, in part.

### BACKGROUND

Moore filed the underlying divorce action on May 2, 2003. Moore's wife, Celeste ("Mrs Moore"), sought temporary orders, which were rendered and reduced to writing after a hearing. The trial court signed the temporary orders on May 19 (the "May 19 order"). On August 20, Mrs. Moore filed a motion to disqualify Foster. In her motion, Mrs. Moore pointed out that Foster had filed two previous mandamus petitions on Moore's behalf, one in

this Court and one in the Texas Supreme Court. *See In re Moore,* 108 S.W.3d 581 (Tex.App.-Tyler 2003, orig. proceeding [mandamus denied] ). She further averred that Foster had verified the petitions stating that he had personal knowledge of the factual matters stated in the petitions. *See* TEX.R.APP. P. 52.3 (factual statements in mandamus petition must be verified by affidavit made on personal knowledge by affiant competent to testify to matters stated). By so doing, she concluded, Foster became a fact witness in the divorce action and must be disqualified. Mrs. Moore also alleged that she

> suspected that Mr. Foster accepted payment in [the] form of diverted community property funds of this marriage from a third party for his representation of Lynwood T. Moore in this cause of action without the prior written permission of this Court in direct violation of the Temporary Orders of this Court [signed on May 19, 2003], thus making himself a party to the conspiracy to defraud the community property estate of the parties. For these and other reasons it has become evident that Mr. Foster may, and probably will, be called as a material fact witness in the subject litigation.

Mrs. Moore also sought disgorgement of any payment Foster received in violation of following provision in the trial court's May 19 order:

> It is **FURTHER ORDERED, ADJUDGED AND DECREED** that legal counsel for Lynwood T. Moore, Petitioner, (and any and all successor counsel or co-counsel) as agents of Petitioner and as officers of this Court, be and they are hereby **ORDERED** to refrain from accepting any sums of money or thing of value from or for Lynwood T. Moore or on Lynwood T. Moore's behalf or account, directly or indirectly, for attorneys' fees or costs of court in this cause

in excess of such additional sums as may hereafter be approved in advance by the written order of this Court.

On September 4, 2003, the trial court conducted a hearing on the motion to disqualify. Mrs. Moore's counsel, Paul Fanning ("Fanning"), called Foster as a witness and asked Foster how much he had been paid to represent Moore. Foster invoked the attorney-client privilege. Fanning disputed Foster's claim of privilege, and the following exchange occurred:

> THE COURT: If Mr. Foster has disobeyed a court order and took money he's not supposed to, wouldn't that be a crime?
>
> . . . .
>
> FANNING: I don't know. I don't think so. I think it would be contemptuous, but not-
>
> THE COURT: Wouldn't I have to warn him of his constitutional rights if he's about to testify, to something that could be used against him?
>
> FANNING: If he was subject to a motion for contempt, I believe that's true. So I think if he wants to assert his Fifth Amendment privilege, that's fine. But I don't think there's any attorney-client communication privilege involved.
>
> . . . .
>
> THE COURT:. . . .All right. Your objection is overruled, and you will answer the question that was asked.

Foster then testified that he had been paid $20,000 to represent Moore. He also stated that $10,000 of that sum was paid by a check from Moore sometime after May 27.

Upon further questioning, Foster stated that Moore did not pay the additional $10,000, that he did not know who else had paid him, and that he was not sure in what form the other funds were paid. The trial court asked Foster to explain how he could

not know who paid him, and Foster again asserted the attorney-client privilege. A protracted discussion ensued in which Fanning argued that Foster's claim of privilege could not be sustained. In his argument, Fanning made several references to alleged fraudulent conduct by Moore and Foster. For example, Fanning stated that Foster's testimony was not privileged, and cited two exceptions that pertain to fraudulent acts by a client. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(c)(7), (8), *reprinted in* TEX. GOV'T CODE ANN., tit 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9) (lawyer may reveal confidential information where necessary to prevent client from committing fraudulent act or to rectify consequences of client's fraudulent act in which lawyer's services have been used). Fanning also stated that

> the Court can take it as a given that if Mr. Moore violates [the attorney's fee provision of the May 19 order] through anyone, through himself or anyone acting in active concert with him-and I think anybody who would pay an attorney's fee to his lawyer is acting in active concert with him-if he violates this Court's order, then that is automatically fraud upon the Court, and it's fraud upon my client.

Moreover, Fanning informed the court that "Mr. Foster is the person who is acting in active concert with Mr. Moore."

In response to Fanning's assertions, the trial judge stated that the cited exceptions were relevant "presuming I find it's a fraudulent act." The discussion continued as follows:

> FANNING: Well, it's a fraudulent act for Mr. Moore or his confederates to pay more than what the Court allowed

to Mr. Foster and thus tilt the playing field in this case completely lopsided.[1]

. . . .

> FANNING: Your Honor, I object to Mr. Foster invoking the [attorney-client] privilege. The privilege belongs to Mr. Moore, not Mr. Foster.

. . . .

> THE COURT: We're here on the question right now that was asked on whether or not you can give me an attorney-client objection that prevents that answer. . . . Objection overruled. Answer the question.

> FOSTER: I'm sorry, Your Honor. I can't do it. And I want to further state in the record on my own defense that the only basis for which I can possibly establish a source of those funds would be from communications with my client. They are privileged and I cannot, absent waiver from my client, answer it without the peril of a grievance myself of having to reveal an attorney-client privilege.

> And given the circumstances . . . of where this is going, where he's trying to turn this into some fraud that I have committed, I'm going to add the Fifth Amendment at this time, too.

> It seems to me there is a potential, at least, for Mr. Fanning to leave here and go back and now sue me for fraud or somehow say I've defrauded the community or participated in a conspiracy which could be contemptuous and therefore quasi criminal in nature, and I, therefore, raise the Fifth Amendment in my own defense in addition to-without waiving the attorney-client privilege.

**1.** This is a reference to Fanning's complaint that Moore had failed to pay Fanning $55,000 in interim attorney's fees, forensic accounting fees, and appraisal and miscellaneous fees as required by the May 19 order.

Fanning argued to the court that by invoking the Fifth Amendment, Foster had "again and independently disqualified himself." Fanning further pointed out that both Foster and Moore had knowledge of the trial court's order preventing Foster from accepting fees above the amount authorized by the court and "went against" the order. Therefore, Fanning argued, the court had no alternative but to disqualify Foster and order disgorgement of the unauthorized $10,000 payment.

The trial court ruled that Foster's invoking the Fifth Amendment "by itself" disqualified him as Moore's attorney. However, the court recessed the hearing for the attorneys to research the issue. When the hearing resumed, Fanning and Foster presented their arguments and authorities to the court. After a second recess and the conclusion of further argument, the trial court restated its ruling that by invoking his Fifth Amendment rights, Foster had disqualified himself as Moore's attorney. The court also ordered Foster to pay into the registry of the court all funds in excess of $10,000 that he received for representing Moore. These orders were reduced to writing and signed on September 5, 2003 (the "September 5 order").

On September 8, Moore filed a petition for writ of mandamus with this Court complaining of the September 5 order. In his petition, Moore requested emergency relief and an order vacating the order. We stayed the September 5 order pending our consideration of Moore's mandamus petition.

### PREREQUISITES TO MANDAMUS

 Mandamus is an extraordinary remedy available "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). To obtain mandamus relief, the relator must demonstrate a clear abuse of discretion for which there is no adequate remedy at law. *Id.* at 839–40. Mandamus is appropriate to review the alleged improper disqualification of counsel. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex.2002). A party generally lacks an adequate appellate remedy if its counsel is disqualified. *Mendoza v. Eighth Court of Appeals*, 917 S.W.2d 787, 789–90 (Tex. 1996) (citing *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex.1989)). Therefore, in considering the disqualification issue, we need only determine whether the trial court abused its discretion in disqualifying Foster. The general rule is that a relator challenging an incidental pretrial ruling by mandamus must demonstrate that appeal is an inadequate remedy. *Walker*, 827 S.W.2d at 842. We have found no exception that renders this general rule inapplicable to disgorgement orders. Consequently, Moore must satisfy both prerequisites to mandamus with respect to the disgorgement provisions of the May 19 order.

 A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). This standard has different applications in different circumstances. *Walker*, 827 S.W.2d at 839. When reviewing factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Id.* The relator must establish that the trial court could reasonably have reached only one result. *Id.* at 840. The reviewing court cannot set aside the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*

Review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

### DISQUALIFICATION OF COUNSEL

"Disqualification is a severe remedy." *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990). Texas courts have long held that the right to be represented by counsel of choice is a valuable one. *Keller Indus., Inc. v. Blanton,* 804 S.W.2d 182, 185 (Tex.App.-Houston [14th Dist.] 1991, orig. proceeding) (citations omitted). The unwarranted denial of that right can result in immediate and palpable harm. *Nitla,* 92 S.W.3d at 422; *Keller,* 804 S.W.2d at 185. Although the right is not absolute, a court should not grant a motion to disqualify counsel unless a compelling reason exists. *See id.*

Here, the trial court disqualified Foster because he invoked the Fifth Amendment during his testimony at the hearing on the motion to disqualify. The September 5 order contains the following provision:

> [T]he Court finds that Robert R. Foster during the course of the hearing claimed a personal Fifth Amendment privilege against self-incrimination rather than reveal the identify [sic] of the person or entity which transferred the sum of $10,000.00 to him in violation of this Court's Temporary Orders in this case and which Robert R. Foster was forbidden by this Court's Temporary Orders from accepting. The Court is of the opinion and finds that this disqualifies Robert R. Foster from representing Petitioner, Lynwood T. Moore, *independently of any of the grounds pled in the motion* and that Robert R. Foster is so disqualified. (Emphasis added).

In reviewing the merits of Moore's petition, we focus solely on the trial court's ruling. *See In re Meador,* 968 S.W.2d 346, 350 (Tex.1998). Consequently, we do not consider whether Foster could have been disqualified on the grounds alleged in Mrs. Moore's motion.

Moore contends that mandamus should issue because case law does not support Foster's disqualification. He also argues, at least implicitly, that we should not draw a negative inference from Foster's assertion of the Fifth Amendment "given the allegations and tenor of accusations of [Mrs. Moore's] attorney, made personally against [Foster]." Mrs. Moore counters that the trial court did not abuse its discretion in disqualifying Foster and, as support for her position, relies upon *Contico Int'l, Inc. v. Alvarez,* 910 S.W.2d 29 (Tex.App.-El Paso 1995, orig. proceeding), *mand. granted sub. nom., Mendoza v. Eighth Court of Appeals,* 917 S.W.2d 787 (Tex. 1996). Unlike this case, the trial court in *Contico* refused to disqualify an attorney who asserted his Fifth Amendment privilege. However, the analyses in *Contico* and *Mendoza,* when read together, are pertinent here.

### Contico and Mendoza

In *Contico,* the plaintiff's attorney in the underlying proceeding ("Scherr") was accused of stealing Contico's investigation file. The accusation was made after Contico's attorney noticed during a discovery hearing that Scherr appeared to possess a notebook and a videotape from Contico's file. Scherr made no response to the accusation and left the courtroom. Criminal charges were filed against Scherr, and the defendants joined in a motion to disqualify Scherr and his law firm on the ground that Scherr had obtained possession of privileged materials in violation of the Texas

Disciplinary Rules of Professional Conduct. Prior to the hearing on the motion to disqualify, Scherr, through counsel, tendered his notebook and videotape to the trial court for *in camera* inspection. *Mendoza,* 917 S.W.2d at 788–89. At the hearing on the motion, Scherr was called as a witness. When asked precisely what he possessed and how he obtained it, Scherr refused to answer and invoked his Fifth Amendment privilege. *Contico,* 910 S.W.2d at 32–33. Conflicting evidence was introduced concerning whether the materials Scherr possessed were identical to the notebook and videotape in question. At the conclusion of the hearing, the trial court denied the motion to disqualify. *Mendoza,* 917 S.W.2d at 789.

The defendants sought a writ of mandamus requiring the trial court to vacate its order and enter an order disqualifying Scherr. *Contico,* 910 S.W.2d at 31. The court conditionally granted the writ, but emphasized that Scherr was not being penalized for invoking a constitutional right. *Id.* at 43, 45. Rather, the court noted that Scherr's refusal to answer when serious charges were first leveled against him and his later assertion of the Fifth Amendment created a "permissible presumption" that Scherr was in possession of Contico's confidences. *Id.* at 37. However, the court applied the presumption conclusively because the issue related to "the ethical conduct of the legal profession when such conduct directly impacts on the relationship of a lawyer, as an officer of the court, and the bench." *Id.* at 37. Stated another way, Scherr was penalized "for obstructing an inquiry into the performance of his lawyerly duties and for the merely presumptive possession of confidential information." *Id.* at 43. Whether he engaged in actual wrongdoing was not a consideration. *See id.* at 37. "The presumption . . . [was] not based on the truth or falsity of the allegations against Scherr and re-

quire[d] no final determination of the information he possessed or how he obtained it." *Id.*

Scherr and his clients filed a petition for writ of mandamus in the supreme court challenging the issuance of the writ. *Mendoza,* 917 S.W.2d at 787. In contrast to the San Antonio court's approach, the court did not address Scherr's duty as a lawyer. Instead, it considered the trial court's ruling in light of the record and focused on the evidence relating to Scherr's alleged wrongdoing. *Id.* at 790. First, the court stated that, without more, evidence Scherr possessed Contico's confidential information along with Scherr's assertion of the Fifth Amendment could justify a negative inference that Scherr acquired the information by unauthorized means. *Id.* Second, the court noted that the record contained conflicting evidence on whether the information in Scherr's possession was actually a copy of Contico's file. The trial court resolved the conflict in Scherr's favor, and those factual determinations could not be disturbed by mandamus review. *Id.* Consequently, the supreme court concluded that the trial court did not abuse its discretion in denying the motion to disqualify and mandamus by the court of appeals was improper. *Id.*

From our reading of *Contico* and *Mendoza,* we conclude that resolution of the issue before us turns on whether the trial court could have reasonably concluded that Foster had participated in a conspiracy to defraud the Moores' community estate.

### Application of Law to Facts

The record accompanying Moore's mandamus petition establishes the following:

1. The May 19 order prohibited Moore's counsel, including any successor counsel, from accepting pay-

ment for Moore's attorney's fees or costs of court except as approved in advance by written order of the trial court.

2. Foster was Moore's successor counsel.

3. Moore and Foster both had actual knowledge of the contents of the May 19 order.

4. Foster accepted $10,000 from a third party as payment for Moore's attorney's fees.

5. Both Moore and Foster knew the identity of the third party.

6. Foster asserted his Fifth Amendment privilege in response to the trial court's ruling that he must disclose the identity of the third party.

The record is replete with references to Foster's participation in a conspiracy with Moore. However, those references are found only in Mrs. Moore's motion to disqualify and in Fanning's arguments. Mere allegations of unethical conduct are not evidence. *See Spears,* 797 S.W.2d at 656. As such, the record does not contain any *evidence* that Foster engaged in the alleged conduct. Nevertheless, Mrs. Moore maintains that because Foster asserted his Fifth Amendment privilege, the trial court could have inferred Foster's participation in the alleged conspiracy.

■ A fact finder may draw an adverse inference against a party who pleads the Fifth Amendment. *Texas Capital Securities, Inc. v. Sandefer,* 58 S.W.3d 760, 779 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976)); *see also* Tex.R. Evid. 513(c). Refusal to answer questions by asserting the privilege is relevant evidence from which the finder of fact in a civil action may draw whatever inference is reasonable under the circumstances. *Lozano v. Lozano,* 983 S.W.2d 787, 791 (Tex.App.-

Houston [14th Dist.] 1998), *rev'd on other grounds,* 52 S.W.3d 141 (Tex.2001).

■ In essence, Mrs. Moore argues that the trial court could reasonably infer from Foster's Fifth Amendment assertion (1) that Moore diverted community funds to a third party; (2) that those funds were diverted for the purpose of paying Foster's attorney's fees for representing Moore; and (3) that Foster knew of Moore's course of action at its inception. *See Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995) (parties must be aware of harm or wrongful conduct at inception of conspiracy); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983) (meeting of the minds on object or course of action is an element of civil conspiracy). However, such inferences would be no more than pure speculation and are not reasonable based solely upon Foster's refusal to identify the third party. Furthermore, even if such inferences could be drawn, it is equally plausible to infer the opposite. *See Sandefer,* 58 S.W.3d at 780 (when defendant asserts Fifth Amendment, inference that codefendant collaborated with him is just as reasonable as inference that codefendant was unaware of illegal activity). When two equally consistent inferences can be made from an assertion of the Fifth Amendment so that neither inference is more probable than the other, neither inference can be made. *See id.* (citing *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 278 (Tex.1995)). Therefore, the trial court could not have inferred that Foster engaged in the conduct alleged.

### DISGORGEMENT

■ Moore also contends that the trial court abused its discretion by ordering the disgorgement of the third-party payment. We disagree.

The May 19 order, in pertinent part, prohibits Moore's counsel from accepting payment on Moore's behalf, directly or indirectly, for attorneys' fees or costs of court without advance written approval by the trial court. The September 5 order states that a third party "transferred the sum of $10,000.00 to [Foster] in violation of this Court's Temporary Orders in this case and which Robert R. Foster was forbidden by this Court's Temporary Orders from accepting."

The record reflects that Foster represented Moore at a hearing on May 27, 2003 when the trial court considered Moore's motion to vacate the May 19 order. The court denied the motion by written order signed on May 30. At the hearing on the motion to disqualify, Foster testified that he had been paid $20,000, of which $10,000 was paid by someone other than Moore. Foster also testified that he received the third-party payment after May 27, the date of the hearing on Moore's motion to vacate the May 19 order. This evidence supports the trial court's finding.

### CONCLUSION

Based upon our review of the record and the foregoing analysis, we conclude that the trial court could not have reasonably concluded that Foster conspired with Moore to defraud the Moores' community estate. Therefore, we hold that the trial court abused its discretion in disqualifying Foster. We also hold that the trial court did not abuse its discretion in ordering disgorgement of the third-party payment in the amount of $10,000. Because Moore has shown no abuse of discretion in ordering the disgorgement, we do not address whether Moore has an adequate remedy by appeal. We conditionally grant mandamus relief only as to Foster's disqualification. We trust that the trial court will vacate the portion of its September 5 order

disqualifying Foster. The writ will issue only if it fails to do so. The stay of the underlying proceeding granted on September 9, 2003 is lifted.

*Writ conditionally granted, in part.*