**Opinion issued November 4, 2021.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NOS. 01-19-00844-CV, 01-19-00845-CV & 01-19-00846-CV

_____

**JANE DOE, Appellant**

**V.**

**YUM! BRANDS, INC., PIZZA HUT, INC., AND MUY PIZZA HOUSTON, LLC, Appellees**

On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2017-42257

## OPINION

Appellant Jane Doe ("Doe") alleges a pizza delivery driver employed by appellee MUY Pizza Houston, LLC sexually assaulted her while delivering pizza to her apartment. She appeals from the trial court's order granting summary judgment

in favor of appellees YUM! Brands, Inc., Pizza Hut, Inc., and MUY Pizza Houston, LLC on her claims of negligence and gross negligence based on her allegations of sexual assault. Doe raises four issues on appeal. In her first two issues, Doe contends the trial court erred in granting summary judgment on her claims of negligence and gross negligence against appellees because she presented more than a scintilla of evidence raising a genuine issue of material fact as to at least one element of each of her claims. In her third issue, she asserts the trial court erred in dismissing her vicarious liability claim against MUY Pizza Houston, LLC based on its employee's alleged sexual assault. In her fourth issue, Doe argues the trial court abused its discretion in denying her request for a continuance of the summary judgment proceedings to consider additional pending discovery. We affirm.

**Background**

Pizza Hut, Inc. ("Pizza Hut") is the franchisor of "Pizza Hut" branded restaurants. YUM! Brands, Inc. ("YUM") is the indirect parent company of Pizza Hut. MUY Pizza Houston, LLC ("MUY") is a franchisee of Pizza Hut.[1] In March 2017, MUY hired Jimmy Rachal ("Rachal") as a pizza delivery driver at its restaurant located at 20051 Interstate Highway 45, in Spring, Texas ("Spring Restaurant").

---

[1] MUY operates more than 500 Pizza Hut, Taco Bell, and KFC restaurants across seven states and has more than 10,000 employees.

On June 23, 2017, Doe sued YUM, Pizza Hut, and MUY alleging Rachal had sexually assaulted her when he delivered pizza to her apartment on April 28, 2017. She alleged Rachal "stepped inside [her] home with the pizza, closed the door, directed that [Doe] lay on the floor, and thereafter sexually assaulted her." In her second amended petition—the live pleading in this case—Doe asserted negligence, negligence per se, and gross negligence claims against all three appellee corporate entities, alleging specifically:

- Negligent hiring of Rachal;

- Failure to properly screen and/or perform background checks on their employees;

- Failure to hire qualified and adequately trained employees and/or agents;

- Failure to properly train their employees and/or agents;

- Failure to supervise their employees and/or agents;

- Failure to create and/or enforce adequate safety policies and procedures;

- Failure to take action to prevent the incident in question;

- Vicarious liability for their employees and/or agents;

- Violation of applicable government regulations, law, and rules; and

- Other acts deemed negligent and grossly negligent.

In addition to her claims against the corporate entities, Doe sued Rachal for assault and battery and intentional infliction of emotional distress.[2] Pizza Hut, YUM, MUY, and Rachal filed their respective answers.

YUM and Pizza Hut filed a traditional motion for summary judgment arguing Doe's negligence, gross negligence, and negligence per se claims failed as a matter of law. As to Doe's negligence claim, Pizza Hut and YUM argued they did not owe a duty to Doe because they neither had the right to, nor exercised, any control over MUY's day-to-day business affairs, including employment practices and relations, of the Spring Restaurant. In response to Doe's claim for gross negligence, Pizza Hut and YUM argued they did not commit any acts or omissions involving an extreme degree of risk, and they did not possess the right or ability to oversee or control activities at the Spring Restaurant or the behavior of MUY's employees. Finally, as to Doe's negligence per se claim, Pizza Hut and YUM argued they did not have the authority to regulate MUY's employees, and Doe did not identify relevant statutes that would impose on them a standard of conduct for purposes of civil liability, even if violated. Alternatively, they argued Doe had no evidence to support the elements of her negligence, gross negligence, or negligence per se claims. As summary judgment evidence, Pizza Hut and YUM attached to their motion the Location Franchise Agreement ("LFA") between Pizza Hut and MUY dated November 15,

---

[2] The claims against Rachal are not involved in this appeal.

2010, the affidavit of Dawson Bremer, MUY's Chief Legal Officer, and MUY's Hourly Personnel Worksheet for Rachal.

Doe responded to the motion for summary judgment and filed a motion for continuance of the summary judgment hearing. She argued that while she had not yet received meaningful discovery from Pizza Hut and YUM, the evidence currently available raised genuine issues of material fact as to each of her claims precluding summary judgment. She argued the evidence showed Pizza Hut controls its franchisees through its corporate policies, MUY (its franchisee) is Pizza Hut's actual or ostensible agent, and YUM exerted control over Pizza Hut franchisee employees. Doe asked the trial court to deny the motion for summary judgment or continue its consideration of the motion to allow Doe to conduct necessary discovery. As part of her response, Doe attached several email chains between the parties' counsel related to discovery, Doe's discovery requests, the LFA, Doe's affidavit, and screenshots from (1) Pizza Hut's mandatory training for franchisees, (2) its quality assurance program, and (3) YUM's training portal.[3]

Doe then filed a verified motion for continuance and supplemental response to Pizza Hut's and YUM's summary judgment motion. As summary judgment evidence, she attached Pizza Hut's Brand Standards Manual ("Manual") and the

---

[3] The parties initially agreed to postpone the hearing on the motion pending additional discovery.

expert report and deposition transcript of John Gordon, her designated expert. YUM and Pizza Hut responded to Doe's motion for continuance and filed a reply in support of their motion for summary judgment.

MUY separately filed a combined traditional and no-evidence motion for summary judgment, arguing it could not be held liable vicariously for Rachal's alleged intentional torts or criminal acts against Doe because they were not within the course and scope of Rachal's employment. As for Doe's claims of negligent hiring, supervision, and training, MUY argued there was no evidence that Rachal's alleged sexual assault of Doe was foreseeable and, without foreseeability, Doe could not establish the requisite negligence elements of duty and proximate cause. MUY further argued it did not know, nor by the exercise of reasonable care should have known, that Rachal was either unfit or incompetent for his job-related duties thereby creating an unreasonable risk of harm to others, and there is no legal duty for an employer to train its employees to refrain from sexually assaulting customers. In response to Doe's claim for negligent screening or failure to conduct a background check of Rachal, MUY asserted there was no evidence (1) Rachal had any propensity to commit sexual assault, (2) MUY had an actual subjective awareness that hiring Rachal would create any risk of harm to others, or (3) a background check would have revealed any aberrant behavior. As summary judgment evidence, MUY attached to its motion the deposition transcript of MUY's Corporate Representative

Steve Guerra ("Guerra"), Texas Department of Public Safety background check records reflecting Rachal had no prior criminal history, and the deposition transcript of Deputy Daniel Wareham.

In response to MUY's motion, Doe argued the evidence showed MUY was negligent in its duties as Rachal's employer, and MUY knew or should have known through the exercise of reasonable care that Rachal was unfit or incompetent for his position as a pizza delivery driver and posed an unreasonable risk of harm to Doe. In support of her gross negligence claim, Doe argued the evidence showed MUY failed to follow the screening and hiring requirements in the LFA to safeguard the public and consciously disregarded Doe's safety by allowing Rachal to deliver pizza to her apartment. Doe also asserted that Rachal's refusal to answer certain questions during his deposition based on his Fifth Amendment right against self-incrimination was relevant evidence from which the factfinder could draw adverse inferences. Doe requested a continuance of the trial court's consideration of MUY's summary judgment motion until she received responses to her outstanding discovery requests. As summary judgment evidence, Doe attached to her response the Manual, portions of Rachal's employment application, screenshots of Rachal's Twitter profile and a Facebook post, a map view of Doe's house in relation to the Spring Restaurant, a pizza ticket, photos of a pizza bag, Rachal's handwritten statement, Harris County Sheriff's Office records, call records, discovery requests, and the deposition

7

transcripts of Rachal, Guerra, Pizza Hut's and YUM's Corporate Representative Ty Alford ("Alford"), MUY Assistant Manager Collins Thomas, MUY Human Resources Director Gina Bucci, MUY District Manager Carlos Argueta, and Doe's attorney, Noah Wexler.

On June 28, 2019, the trial court granted summary judgment in favor of YUM but denied summary judgment as to Pizza Hut. On August 29, 2019, following a hearing, the trial court granted MUY's combined motion for summary judgment and Pizza Hut's summary judgment motion. The trial court ordered that Doe take nothing by way of any claims or causes of actions asserted against MUY, Pizza Hut, and YUM, and granted appellees' motions to sever.

## Standard of Review

We review a trial court's summary judgment ruling de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no-evidence motion, we need not analyze the arguments raised in the traditional summary judgment motion. *Id*.

After an adequate time for discovery, a party may move for a no-evidence motion for summary judgment on the ground that no evidence exists of one or more

essential elements of the claim or defense on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the challenged elements of its claim or defense. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence raising a genuine issue of material fact. *Forbes, Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* at 172 (quoting *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotation omitted)). More than a scintilla exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Id.* Unless the nonmovant raises a genuine issue of material fact, the trial court must grant summary judgment. TEX. R. CIV. P. 166a(i).

A party who files a no-evidence motion for summary judgment under Rule 166a(i) essentially requests a pretrial directed verdict. *Mack Trucks*, 206 S.W.3d at 581. We review the evidence presented by the summary judgment record in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding

contrary evidence unless reasonable jurors could not. *Id.* at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

When reviewing a traditional summary judgment motion, we take as true all evidence favorable to the nonmovant, and we indulge in every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating*, 164 S.W.3d at 661 (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When, as here, the trial court's order does not state the grounds for the court's decision, we must uphold the judgment if any of the theories advanced in the motion are meritorious. *Provident Life*, 128 S.W.3d at 216.

## Negligence Claims Against MUY

In her first issue, Doe contends the trial court erred in granting summary judgment on her claims of negligence and gross negligence against MUY because she raised more than a scintilla of evidence raising genuine issues of material fact. She argues she adduced evidence that (1) MUY hired Rachal and sent him to Doe's apartment without performing a background check, (2) a background check would have revealed "red flags" in the form of Rachal's provocative social media posts, (3) Rachal informed MUY's managers of his intention or propensity to harm Doe before

10

the alleged sexual assault but MUY failed to prevent the harm, and (4) MUY failed to check on Rachal's whereabouts when he was away from the Spring Restaurant for an unreasonable amount of time on the day of the alleged sexual assault.

## A.      Applicable Law

"Negligent hiring, training, supervision, and retention claims are 'simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability.'"[4] *Black v. Smith Protective Services, Inc.*, No. 01-14-00969-CV, 2016 WL 5400565, at *3 (Tex. App.—Houston [1st Dist.] Sept. 23, 2016, no pet.) (mem. op.) (quoting *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.–Fort Worth 2008, no pet.)); *see also Mindi M. v. Flagship Hotel, Ltd*, 439 S.W.3d 551, 557 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (explaining that this is not "the type of tort that depends on proof of an employee performing a negligent or intentional act within the course and scope of his employment"). To assert direct liability based on a negligence claim, the plaintiff must prove the existence of a legal duty, breach of that duty, and damages proximately resulting from the breach. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

---

[4]     The Texas Supreme Court has not ruled definitively on the existence or elements of claims for negligent hiring, retention, supervision or training. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010) ("We have not ruled definitively on the existence, elements, and scope" of negligent retention and supervision of employees or related torts "such as negligent training and hiring.").

Duty is the threshold inquiry. It is a question of law for the court to decide based on the facts surrounding the occurrence in question. *Id.* In determining whether to impose a duty on a particular defendant, courts weigh (1) the risk involved, (2) foreseeability of the risk, (3) likelihood of injury, and (4) the social utility of the actor's conduct and the magnitude of the burden on the defendant. *See id.* Foreseeability of the risk is the foremost and dominant consideration. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). Foreseeability means that a person of ordinary intelligence should have anticipated the dangers his negligent act created for others. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985).

As a general rule, a person has no legal duty to protect another from the criminal acts of a third person or to control the conduct of another. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995). However, when an employer hires an employee, the employer must exercise reasonable care to see that the employee is competent and fit for the job. *Mindi*, 439 S.W.3d at 557. "An employer is negligent if the employer hires, retains, or supervises an employee whom the employer knows, or by the exercise of reasonable care should have known, is unfit or incompetent, and whose unfitness or incompetence creates an unreasonable risk of harm to others because of the employee's job-related duties." *Id.* Negligence in hiring requires that the employer's failure to investigate, screen, or supervise its

12

hired employee be a proximate cause of the plaintiff's alleged injuries. *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006) (quoting *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)).

**B.     Negligence Claims**

In its traditional motion for summary judgment, MUY challenged the elements of duty and proximate cause of Doe's negligent claims. MUY argued it did not have a duty to perform a background check of Rachal because it neither knew, nor by the exercise of reasonable care should have known, that Rachal was unfit or incompetent, or that his unfitness or incompetence created an unreasonable risk of harm to others because of his job-related duties. It also argued that, based on information gleaned from a background check, MUY could not have foreseen that hiring Rachal could result in criminal activity or harm to others, because Rachal had no prior criminal record.

Doe argues MUY has a legal duty to protect its customers, including Doe, and to take reasonable steps to hire, retain, and supervise its employees. In her summary judgment response, she argued MUY had a duty to perform a background check on Rachal and it breached its duty by failing to perform a background check before hiring him as a delivery driver. Doe argues that a background check would have revealed "red flags" in the form of Rachal's provocative social media posts that

13

would have put MUY on notice that hiring Rachal posed an unreasonable risk of harm to her and others.

An employer owes a duty to its other employees and to the public to determine the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations "that require skill or experience and that could be hazardous to the safety of others." *Najera v. Recana Solutions, LLC*, No. 14-14-00332-CV, 2015 WL 4985085, at *3 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.). An employer may be liable to a third party if it hires, retains, or supervises an employee whom it either knows or should have known is not competent or fit for the job and whose incompetence or unfitness creates an unreasonable risk of harm to others because of the employee's job-related duties. *See Mindi M.*, 439 S.W.3d at 557; *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 100–01 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Thus, the issue here is whether MUY placed Rachal in a situation that created a foreseeable risk of harm to others because of his employment duties.

Texas courts have held that a duty to investigate a prospective employee exists in situations where the employee will have special access to a particularly vulnerable group. *See Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 866 (Tex. App.—Austin 1997), *aff'd*, 990 S.W.2d 732 (Tex. 1998) (concluding vacuum cleaner manufacturer which sold its products only through distributors who acted as independent

14

contractors and hired individuals to make door–to–door sales owed duty to take reasonable precautions to prevent or deter its distributors from hiring persons with histories of crime, violence, or sexually deviant behavior as dealers); *Porter v. Nemir*, 900 S.W.2d 376, 386–87 (Tex. App.—Austin 1995, no writ) (recognizing higher duty in context of drug and alcohol abuse treatment counselors); *Deerings W. Nursing Ctr. v. Scott*, 787 S.W.2d 494, 496 (Tex. App.—El Paso 1990, writ denied) (recognizing higher duty for persons involved in care of elderly). Doe contends the position of delivery driver is one of trust between a restaurant and its customers. She argues delivery drivers have direct access to the homes of vulnerable individuals such as women alone in their homes at night. In support of her contention, Doe points to Guerra's testimony that MUY is aware its customers open their doors to its delivery drivers at home and that such interactions require the customers' trust that such interactions will be safe. MUY responds there is no evidence Rachal had access to particularly vulnerable individuals and therefore no special relationship exists that justifies imposing a duty on MUY to investigate Rachal's criminal background.[5] We need not decide this issue today.

---

[5] At oral argument, MUY's counsel asserted that a bright-line rule exists between those cases in which the employee's job requires him to enter the "inner sanctum" of a customer's residence and cases such as this one where, according to MUY, a pizza delivery driver's job duties do not require him to enter the customer's home.

15

As we have noted, foreseeability of risk is the foremost and dominant consideration in a duty analysis. *El Chico Corp.*, 732 S.W.2d at 311. Absent foreseeability, "there is no duty." *NationsBank, N.A.*, 922 S.W.2d at 954. It is undisputed MUY did not perform a background check on Rachal before hiring him as a delivery driver. However, when a negligence claim is based on a failure to screen or perform a background check, the plaintiff must also show (1) a reasonable employer would not have hired the employee had a background check been performed or (2) a background check would have put the employer on notice that hiring the employee would create an unreasonable risk of harm to others. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010); *Fifth Club*, 196 S.W.3d at 796–97. Stated differently, the question is whether, based on information gleaned from a background check, MUY should have foreseen that hiring Rachal could result in criminal activity or risk to others. *See Wrenn*, 73 S.W.3d at 496; *Mindi M.*, 439 S.W.3d at 557 (regarding screening and background checks "the relevant inquiry is whether 'anything found in a background check' would have placed the employer on notice that hiring the employee would create an unreasonable risk of harm to others").

MUY presented summary judgment evidence that it conducted a criminal history search of Rachal after the alleged sexual assault. The search records included a "Criminal History File, Sex Offender Registration and Name Based Files."

16

Certified DPS records reflect no matching records and no criminal records for Rachal. Thus, MUY could not have foreseen Rachal's alleged "dangerous propensity" from a criminal background check. Doe nonetheless sought to raise a fact issue on foreseeability by attaching two social media posts from Rachal's Facebook and Twitter accounts, which she argues should have put MUY on notice it was hiring a "sexual predator." In a 2012 Facebook post, Rachal is pictured (waist up) clothed wearing a cap and a white t-shirt, holding one hand up while making a sign, and holding a cell phone device in his other hand next to the caption, "Suk my dick." And a screenshot of Rachal's Twitter account shows an undated "follow" of a pornographic account. Doe also points to the deposition testimony of Alford, Pizza Hut's and YUM's corporate representative, that the postings should have caused concern and Rachal should not have been hired based on such postings.

Doe cites no authority, nor are we aware of any, suggesting an employer has a duty to go beyond performing a background check to examine a prospective employee's social media accounts to determine whether hiring the individual would create an unreasonable risk of harm to others.[6] Even if such a duty existed, Rachal's 2012 Facebook post and Twitter follow of a pornographic website do not constitute evidence that would have placed MUY on notice that hiring Rachal could result in

---

[6] Nor does Doe explain the parameters of such an alleged duty, such as for example, how far back an employer would have to search, what social media sites, and whether consents must first be obtained.

17

criminal activity or risk to others. *See Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970) ("[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment."). Rachal's 2012 Facebook post—posted when Rachal was thirteen years old and five years before his hire date—and an undated Twitter "follow" of a pornographic website, although unquestionably tasteless and inappropriate, do not raise a genuine issue of fact concerning foreseeability of Rachal's alleged propensity to commit a sexual assault years later. *See Fifth Club*, 196 S.W.3d at 796–97 (holding employee's failure to comply with requirement in peace officer manual and his reprimand for using profanity to member of public did not make his assault of customer foreseeable); *Barton v. Whataburger*, 276 S.W.3d 456, 463 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("While Love's convictions, if discovered, should have raised Whataburger's suspicions about his fitness to manage a restaurant, under Texas law, they did not make his eventual participation in an aggravated robbery leading to murder reasonably foreseeable."); *Houser v. Smith*, 968 S.W.2d 542, 545 (Tex. App.—Austin 1998, no pet.) ("Whether [defendant] would have fired [the criminal actor] had he discovered [his] forgery convictions is irrelevant. . . . the question presented is whether [the actor's] criminal conduct and the type of harm that befell [plaintiff] were foreseeable and presented a

18

risk that [defendant] was required to guard against by investigating [the actor's] criminal background.  Under these facts, we hold the conduct and harm were not foreseeable . . . .").

Similarly, Alford's testimony that Rachal should not have been hired based on his social media posts does not constitute evidence MUY should have foreseen that hiring Rachal could result in criminal activity or risk to others.  *See Capece v. Navisite, Inc.*, No. 03-02-00113-CV, 2002 WL 31769032, at *8 (Tex. App.—Austin Dec. 12, 2002, no pet.) (concluding plaintiff presented no evidence from which it could be inferred defendants' employees would commit crime of sexual assault where plaintiff was not foreseeable victim of any sexual conduct or crime by employees and no one reported any acts of sexual misconduct by employees prior to alleged incident).

Doe also argues MUY was negligent in supervising Rachal because before the alleged sexual assault, Rachal informed MUY's managers of his intention or propensity to harm Doe.  MUY argues that despite this knowledge, MUY failed to prevent the harm or check on Rachal's whereabouts on April 28, 2017, after he was absent from the Spring Restaurant for an unreasonable amount of time while out delivering Doe's pizza.

There is no evidence in the record Rachal directly informed his managers of his alleged intentions.  Rather, Doe argues we should draw an adverse inference

against MUY on this issue because Doe invoked his Fifth Amendment right against self-incrimination during his deposition in response to questions over information he allegedly provided to his manager before leaving the Spring Restaurant on April 28, 2017. For example, based on his Fifth Amendment rights, Rachal refused to answer the following questions:

> Q: Mr. Rachal, when you left the store to deliver the pizza to [Doe's] apartment complex, you informed your manager that you intended on raping the customer as you left the store?

> Q: When you informed MUY Pizza-Houston, LLC, Pizza Hut, and YUM! Brands of your intent to utilize your appearance and image as a Pizza Hut delivery driver to gain access to [Doe's] apartment and sexually assault her, your supervisors and employers did nothing in response, correct?

> Q: The defendant, MUY Pizza-Houston, LLC, put you in a position of trust, knowing you intended on raping customers, including [Doe], prior to you leaving the store with a pizza to deliver to her on April 28, 2017?

According to MUY, because Rachal refused to answer these (and other) questions during his deposition, we should draw an adverse inference that Rachal told his supervisors about his alleged intentions to harm Doe and MUY failed to prevent the harm, which inference, Doe argues, raises an issue of material fact precluding summary judgment on her negligence claims. Doe's argument is unavailing.

Even if Doe's invocation of *his* Fifth Amendment right could give rise to an adverse inference against *MUY*, an issue we need not decide, an adverse inference is not sufficient by itself to meet a party's burden of proof. Without "some probative

20

evidence of the elements of a party's claim, any negative inference that might be drawn from the invocation of the 'privilege against self-incrimination cannot rise beyond mere suspicion.'" *Brauss v. Triple M. Holding GmbH*, 411 S.W.3d 614, 623 (Tex. App.—Dallas 2013, pet. denied). Moreover, while a factfinder in a civil action may draw certain inferences from a party's refusal to answer questions based on the Fifth Amendment, such inferences must be "reasonable under the circumstances." *Texas Capital Secs., Inc. v. Sandefer*, 58 S.W.3d 760, 779 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

The record does not reflect Rachal directly informed his managers of his alleged intentions. An inference Rachal told his supervisor he was going to sexually assault someone and that MUY failed to take steps to prevent the harm based solely on Rachal's refusal to answer questions from Doe's counsel is not reasonable. *See In re Moore*, 153 S.W.3d 527, 534 (Tex. App.—Tyler 2004, mand. denied) (concluding drawing inference from attorney's invocation of Fifth Amendment privilege during testimony at hearing that he participated in alleged conspiracy would be no more than pure speculation and was not reasonable based solely upon attorney's refusal to identify third party). Rachal's invocation of his Fifth Amendment rights is no evidence he informed MUY's managers of his intention to sexually assault Doe or that despite knowledge of Rachal's intentions, MUY did nothing to prevent the harm.

We hold Doe failed to come forth with more than a scintilla of evidence to satisfy the foreseeability element of her negligence claims against MUY. *See Mindi M.*, 439 S.W.3d at 557. The trial court did not err in rendering summary judgment on Doe's negligence claims against MUY.

## C. Gross Negligence Claim

In her second amended petition, Doe also asserted a claim for gross negligence against MUY. To recover on a claim of gross negligence, the plaintiff must prove two elements: (1) viewed objectively from the standpoint of the defendant at the time of the occurrence, the defendant's act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(11); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Extreme risk does not mean a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *See U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Actual awareness focuses on the defendant's state of mind; the plaintiff must prove that the defendant knew about the peril but did not care. *See La.–Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999).

Doe's gross negligence claim is based on the same acts or omissions underlying her negligence claims. She asserts MUY should have conducted a background check before hiring Rachal as a delivery driver. She also argues there is evidence MUY knew or should have known of Rachal's intention to harm Doe based on Rachal's refusal to deny or otherwise respond to certain deposition questions over information Rachal allegedly provided to his manager about his intention to harm Doe and MUY's alleged failure to prevent the harm. She asserts this evidence shows MUY had an actual subjective awareness of the risk Rachal posed to Doe, but nevertheless proceeded in conscious indifference to her rights, safety, and welfare.

Doe did not produce any evidence MUY had an actual, subjective awareness that hiring Rachal as a delivery driver would create any risk of harm to others, much less an extreme risk. And for the reasons already discussed, Rachal's invocation of his Fifth Amendment right does not support an adverse inference that MUY knew about Rachal's alleged intent to sexually assault Doe or failed to prevent the harm despite such knowledge. *See Sandefer*, 58 S.W.3d at 779. Accordingly, MUY was entitled to summary judgment on Doe's gross negligence claim.[7]

We overrule Doe's first issue.

---

[7] Doe does not challenge on appeal the granting of summary judgment on her negligence per se claim and therefore we do not consider it.

23

**D.    Vicarious Liability**

In her third issue, Doe argues the trial court erred in dismissing her claim for vicarious liability against MUY based on Rachal's conduct.

Generally, a person has no duty to control the conduct of another. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). Under the theory of respondeat superior, however, an employer may be liable vicariously for the negligent acts of its employee if the employee's actions are within the course and scope of his employment. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). Within the "course and scope of employment" means within the scope of the employee's general authority, in furtherance of the employer's business, and for the accomplishment of the object for which he was hired. *Painter*, 561 S.W.3d at 132 (quoting *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)). If "an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.* at 131.

Intentional torts "committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity," may render the employer liable. *See GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex.1999) (holding employer vicariously liable for regular and daily pattern of verbal abuse, humiliation, and terror by supervisor). In cases involving assault, to "impute responsibility for such intentional acts to an employer, it is incumbent upon the

plaintiff to prove the assault was closely connected with the servant's authorized duties, and not the result of personal animus." *Garrett v. Great Western Distrib. Co.*, 129 S.W.3d 797, 800 (Tex. App.—Amarillo 2004, pet. denied). "[A]ssault is usually the expression of personal animosity and is not for purposes of carrying out the employer's business." *Wrenn*, 73 S.W.3d at 494.

In support of her vicarious liability claim, Doe argues Rachal exploited his position of trust as a pizza delivery driver to gain access to Doe's apartment where he allegedly sexually assaulted her. She points to evidence showing Rachal was delivering a Pizza Hut pizza, dressed in a Pizza Hut uniform, and delivering pizza in response to Doe's internet order. Even if true, this evidence does not establish Rachal's alleged sexual assault of Doe was in furtherance of MUY's business or for the accomplishment of an object for which he was employed. Rather, Rachal's sexual assault of Doe, if it occurred, was for his own prurient interest and during its commission, he was no longer acting for MUY. *See Painter*, 561 S.W.3d at 137 (explaining "an employer is not responsible for what occurs when an employee deviates from the performance of his duties for his own purpose"). The delivery of pizza at that point was only a pretense or a means for Rachal's alleged conduct. *See Shutters v. Domino's Pizza, Inc.*, 795 S.W.2d 800, 803 (Tex. App.—Tyler 1990, no pet.) ("Although one's employment may be the occasion for the wrongful act or may give a convenient opportunity for execution, an injury does not arise out of one's

25

employment if the assault is not connected with the employment or is for reasons personal to the victim as well as the assailant."). There is no correlation between Rachal's duties as a pizza delivery driver and the alleged sexual assault of Doe, nor was the assault "so connected with and immediately arising out of Rachal's employment tasks [as a delivery driver] as to merge the activities into one indivisible tort." *See Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding neurological examination during which doctor allegedly placed his penis in patient's hand was merely pretense or means for doctor's inappropriate personal gratification); *Mackey v. U.P. Enters., Inc*., 935 S.W.2d 446, 454 (Tex. App.—Tyler 1996, no pet.) (concluding restaurant managers' alleged sexual assaults of employee were not connected to employment duties, were solely acts of managers, and were not within scope of generally authority conferred by employer); *Kelly v. Stone*, 898 S.W.2d 924, 928 (Tex. App.—Eastland 1995, writ denied) (concluding supervisor's assault against employee and supervisor's comments to employee about his desires that they belonged together were not in furtherance of employer's business or within scope of supervisor's general authority).

Rachal's alleged sexual assault of Doe was not within the course and scope of his employment, and thus MUY cannot be held liable under a theory of respondeat

superior. The trial court did not err in granting summary judgment on Doe's vicarious liability claim against MUY.

We overrule Doe's third issue.

## Negligence Claims Against Pizza Hut and YUM

In her second issue, Doe argues the trial court erred in granting summary judgment on her negligence and gross negligence claims against Pizza Hut and YUM. She claims she adduced evidence Pizza Hut and YUM (1) controlled all aspects of MUY's operations, including hiring and pizza delivery standards, through corporate policies, (2) failed to enforce their policies through site visits or inspections, and (3) exercised control over MUY's use of the Pizza Hut marks, and Doe relied on the Pizza Hut brand and appearance in allowing delivery to her home.

## A. Applicable Law

"An independent contractor is one who, in pursuit of an independent business, undertakes specific work for another using his or her own means and methods without submitting to the control of the other person as to the details of the work." *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 911 (Tex. App.—Fort Worth 2009, pet. denied). "As a general rule, one who employs an independent contractor has no duty to ensure that the contractor safely performs its work." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864–65 (Tex. 2021). "Because an independent contractor has sole control over the means and methods of

27

the work to be accomplished," the entity that hires or enters an agreement with the independent contractor is generally not liable vicariously for the tort or negligence of the contractor. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (citations omitted). An exception to this rule arises when the contracting entity "retains some control over the manner in which the contractor performs the work that causes the damage." *Hernandez*, 622 S.W.3d at 865.

To determine whether a franchisor is liable vicariously for a franchisee's conduct, "we consider whether the franchisor has the right to control the franchisee with respect to the details of that conduct." *See Domino's Pizza, L.L.C. v. Reddy*, No. 09-14-00058-CV, 2015 WL 1247349, at *1 (Tex. App.—Beaumont Mar. 19, 2015, pet. denied), *cert. denied*, 137 S. Ct. 395 (2016) (citing *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex. 1998)); *see also Limestone Prod. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (citations omitted). The right of control test remains the "the keystone" for imposing liability on a franchisor based on the actions of a franchisee or the franchisee's employees. *See Farlow*, 284 S.W.3d at 911; *Smith v. Foodmaker, Inc.*, 928 S.W.2d 683, 687 (Tex. App.—Fort Worth 1996, no writ). Under this test, we must examine whether the franchisor has the right to control the franchisee in the details and methods of its work. *Smith*, 928 S.W.2d at 687. "A plaintiff can prove the requisite control by establishing that the general contractor either actually controlled the manner in

28

which the subcontractor performed its work or had a contractual right to do so." *Hernandez*, 622 S.W.3d at 865.

To trigger vicarious liability, the right to control must extend to the specific activity from which the injury arose. *Id.* (holding that control must relate to condition or activity that caused injury); *see also Farlow*, 284 S.W.3d at 911–12. Further, the control must extend to the "means, methods, or details" of the independent's contractor's work. *Hernandez*, 622 S.W.3d at 865. Several factors aid the right-of-control determination, including (1) the independent nature of the business; (2) the obligation to furnish tools, supplies, and materials; (3) the right to control work progress, except as to final results; (4) the time of employment; and (5) the method of payment. *Id*. at 911. "A possibility of control is not evidence of a 'right to control' actually retained or exercised." *See Reddy*, 2015 WL 1247349, at *4 (citing *Coastal Marine Serv., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999)). Absent clear facts to the contrary, under typical circumstances, a franchisee is an independent contractor. *Dulce Rests., L.L.C. v. Tex. Workforce Comm'n*, No. 07-19-00213-CV, 2020 WL 5755016, at *5 (Tex. App.—Amarillo Sept. 25, 2020, no pet.) (mem. op.).

"A contract expressly providing that a person is an independent contractor is determinative of the relationship absent evidence that the contract is a mere sham or subterfuge designed to conceal the true legal status of the parties or that the contract

29

has been modified by a subsequent agreement between the parties." *Farlow*, 284 S.W.3d at 911. "Evidence that the parties did not intend for an independent contractor relationship can come from the contract itself, i.e., whether, despite language describing the relationship as an independent contractor relationship, other contract language evidences such a right of control that the relationship is actually that of employer/employee." *Reddy*, 2015 WL 1247349, at *1 (citing *Farlow*, 284 S.W.3d at 911). "It can also come from extrinsic evidence, such as instances of actual control by the principal sufficient to show that the true agreement of the parties vested a right of control establishing an employment relationship." *Id.* (citing *Farlow*, 284 S.W.3d at 911).

## B.    Vicarious Liability

Doe contends she presented evidence Pizza Hut and YUM retained a right to control MUY's hiring practices and policies thus raising a genuine issue of material fact precluding summary judgment on her vicarious liability claim. Alternatively, she argues YUM and Pizza Hut are liable under a theory of ostensible agency for MUY's negligence.

### 1.    Right of Control

Pizza Hut and YUM moved for summary judgment on the duty element of Doe's negligence claims. Pizza Hut and YUM argued that under the LFA, MUY is an independent contractor, not an agent of Pizza Hut or YUM, and neither Pizza Hut

nor YUM has the right to control MUY's screening, hiring, training, or supervision of Rachal, and neither exercised such control. Thus, they argue, they cannot be held liable to Doe for MUY's alleged negligent conduct.

The LFA establishes MUY is an independent contractor. The LFA states:

> [Pizza Hut] and Franchisee are not and will not be considered as joint venturers, partners, or agents of each other. Neither Franchisee nor [Pizza Hut] will have the power to bind or obligate the other except as set forth in this Agreement. Franchisee specifically acknowledges that the relationship created by this Agreement is not a fiduciary, special, or any other similar relationship, but rather is an arm's-length business relationship. [Pizza Hut] owes Franchisee no duties except as expressly provided in this Agreement.

Doe argues Pizza Hut and YUM nonetheless exerted significant control over MUY and Rachal as evidenced by various provisions of the LFA and Pizza Hut's Manual. She asserts that under the LFA, MUY must adhere to the Manual, which explains and defines the proper operation of System Restaurants[8] and sets forth the standards of operation for MUY. According to Doe, the LFA makes clear Pizza Hut "has sole discretion to interpret the standards that it sets forth in the Manual and elsewhere" and MUY must "comply with any change in the standards within the time-frame set by [Pizza Hut]." Doe relies on the following language in the Manual:

- "All Franchisees and Licensees must become familiar with these Brand Standards in order to ensure compliance. . . . Failure to comply with the Brand Standards may constitute a breach of one or more provisions

---

[8] The LFA defines "System Restaurants" as only three types of "Pizza Hut" restaurant concepts: (a) "Red Roof: restaurants, (b) delivery restaurants, and (c) delivery/carryout restaurants."

31

of a Franchise Agreement . . . which could result in a notice of default requiring prompt remediation. Failure to timely remediate such a breach may result in termination of franchise or license rights."

- "Franchisees and Licensees must comply with any such new or changed standard[s] by the date specified in any such update."

- "System Restaurants can only be operated with the necessary consistency that our customers deserve if each and every one of them complies closely with [Pizza Hut]'s exacting operational standards."

- Where Pizza Hut "manuals, policies, or procedures establish a higher standard than local laws or governmental regulations or requirements, then Franchisees and Licensees shall comply with such [Pizza Hut] standards unless prohibited by law from so doing."

Doe argues these requirements "show a level of control that Pizza Hut maintained and/or exercised over MUY that gives rise to a legal duty." Doe's argument is unconvincing.

The decision in *Domino's Pizza Hut, L.L.C. v. Reddy*, No. 09-14-00058-CV, 2015 WL 1247349, at *1 (Tex. App.—Beaumont Mar. 19, 2015, pet. denied), *cert. denied*, 137 S. Ct. 395 (2016) is instructive. There, a pizza delivery driver employed by MAC Pizza Management, Inc. ("MAC"), a Domino's Pizza ("Domino's") franchisee, struck another vehicle, killing one of the occupants and injuring the other. *See id.* at *1. Reddy, as guardian, sued MAC and Domino's for negligence. *See id.* The trial court rendered judgment on the jury's verdict in favor of Reddy, and Domino's appealed. *See id.*

32

Domino's contended, among other things, the evidence was legally insufficient to establish that it owed a duty to the vehicle's occupants because it had no right to control MAC's day-to-day operations, did not exercise control over the injury-producing acts, and could not be held vicariously liable. *See id.* Reddy argued Domino's had both a contractual right of control and actual control, pointing to evidence showing (1) MAC had to comply with Domino's specifications, standards, and operating procedures, including the methods and procedures relating to receiving, preparing, and delivering customer orders, (2) Domino's unilaterally could modify its standards and procedures and conduct inspections, (3) Domino's could terminate the franchise agreement if MAC violated corporate standards and procedures, (4) Domino's standards regulated driver age and history, safety, vehicle inspections, and driver conduct during deliveries, (5) the corporate guidelines promoted speeding among delivery drivers by use of the thirty-minute rule, PULSE time tracking, evaluations that factored delivered times into their scores and affected bonuses, and encouragement of incentives to improve job performance, and (6) Domino's decided the store's delivery area and provided directions and maps through PULSE. *See id.* at *4.

The court of appeals concluded the evidence was legally insufficient to support the jury's finding that Domino's controlled or had the right to control the details of the injury-producing acts or omissions of MAC and its employees. *See id.*

33

The court stated the fact that Domino's retained the right to terminate the franchise agreement, retained a right to receive evaluations and other reports, had a right to conduct inspections, or required MAC to comply with Domino's procedures and rules was not evidence that Domino's had a right of control. *See id*. The court held that although Domino's had authority to modify its own rules and regulations, the right to prescribe alterations and deviations was not the type of supervisory control sufficient for imposing a duty on Domino's. *See id.* It also held the fact that Domino's had set general minimum operational standards did not negate the franchise agreement's independent contractor provision. *See id.* at \*5. The court reversed the trial court's judgment and rendered judgment dismissing Reddy's claims against Domino's. *See id*.

As in *Reddy*, the fact that Pizza Hut retained the right to terminate the franchise agreement or require MUY to comply with Pizza Hut's procedures is not evidence of control. *See id.* at \*4 (stating fact that franchisor retained right to terminate franchise agreement was not evidence that Domino's had right of control); *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 714, 720 (Tex. App.—Fort Worth 2006, no pet.) (noting right to terminate agreement and requirements for compliance with applicable practices, laws, and regulations that relate to performance of the agreement are not evidence of right to control details of work); *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606–07 (Tex. 2002) (rejecting argument that Dow had right

to control by virtue of requiring Bright to comply with Dow's rules and regulations.). Similarly, Pizza Hut's right to modify its own standards or impose new ones is not the type of supervisory control sufficient to impose a duty on Pizza Hut. *See Johnston v. Oiltanking Hous., L.P.*, 367 S.W.3d 412, 419 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "A possibility of control is not evidence of a 'right to control' actually retained or exercised." *Lawrence*, 988 S.W.2d at 226. These provisions simply do not show Pizza Hut and YUM had a right to control MUY with respect to the details and methods of its operations. *See Limestone Prod. Distrib.*, 71 S.W.3d at 312 (citations omitted); *Reddy*, 2015 WL 1247349, at *4.

Doe argues Pizza Hut's control extends to MUY's pizza delivery standards, training, and hiring. In support of this argument, Doe points to the testimony of Pizza Hut's and YUM's corporate representative, Alford, that "adequate delivery service" as defined in the LFA requires Pizza Hut's franchisees' drivers be properly screened and trained before they perform deliveries. Doe also relies on the testimony of MUY's corporate representative, Guerra, that the Manual requires franchisees to develop a written policy and consistent process for conducting criminal background checks on delivery drivers. Doe also points to Guerra's testimony that Pizza Hut provides the employee training modules MUY uses and conducts audits of MUY to ensure and score MUY's compliance.

That Pizza Hut sets general minimum operational standards for its franchisees does not establish Pizza Hut has the right to control MUY in the details of its operations. *See Fitz v. Days Inns Worldwide, Inc.*, 147 S.W.3d 467, 473 (Tex. App.—San Antonio 2004, pet. denied). To the contrary, the LFA and Manual make clear MUY retains the right to control the means, methods, and details of implementing operational standards, including specifically those related to its employment practices. For example, under the heading "Employment Relations," Section 13.1 of the LFA states that MUY "will be solely responsible for all of [its] employment practices, including hirings, terminations, and other personnel actions." Similarly, under the heading "Training and Team Member Brand Standards," Section 1.9 of the Manual provides that "[a]ll team members and managers working in System Restaurants and Express Outlets must meet specified training and appearance standards. Franchisees and Licensees are solely responsible for the implementation of these standards and for all of their employment practices, including hiring, performance management, termination and other personnel actions." And Section 1.9.3 of the Manual, which addresses background checks, provides:

> Franchisees and Licensees must develop a written policy and consistent process for conducting criminal background checks on: (1) all restaurant management positions; and (2) delivery drivers. Franchisees and Licensees shall set their own standards consistent with the law, but at a minimum must use a process that identifies Registered Sex Offenders for review.

The same is true of Pizza Hut's right to conduct audits to ensure and score MUY's compliance with employee training. Such a right does not demonstrate Pizza Hut has a right to control MUY in the details of its operations. *Reddy*, 2015 WL 1247349, at \*3–5 (concluding franchise agreement under which franchisor retained right to require audit and conduct certain inspections of franchisee was not evidence that franchisor had right of control); *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (stating right to inspect progress is insufficient to establish right of control); *see also Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004) ("It has long been the rule that a right to receive reports is not a right to control.").

Alford also confirmed MUY retained control over the details and methods of implementing its own employment practices. He testified franchisees are solely responsible for implementation of standards and employment practices, including hiring and training, that the Manual sets forth the minimum standards for hiring delivery drivers, and that franchisees are in charge of their own employees, who are not employees of Pizza Hut.

We thus hold Doe did not provide more than a scintilla of evidence that Pizza Hut and YUM had the right to control MUY with respect to the details and methods of its operations, or as more germane here, that Pizza Hut or YUM had the right to control "the specific activity from which the [alleged] injury arose." *Farlow*, 284

37

S.W.3d at 911–12. The trial court thus did not err in granting summary judgment on Doe's negligence claim against YUM and Pizza Hut.

## 2. Ostensible Agency

Doe contends, alternatively, Pizza Hut and YUM are liable for MUY's actions under the doctrine of "ostensible agency." Generally, a person who retains or contracts with an independent contractor is not liable vicariously for the tort or negligence of that person. *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947. "Nevertheless, an . . . entity may act in a manner that makes it liable for the conduct of one who is not its agent at all or who, although an agent, has acted outside the scope of his or her authority." *Id.* Liability may be imposed in this way under the doctrine of ostensible agency "when the principal's conduct should equitably prevent it from denying the existence of an agency." *Id.* (citing *Marble Falls Hous. Auth. v. McKinley*, 474 S.W.2d 292, 294 (Tex. Civ. App.—Austin 1971, writ ref'd n.r.e.)).

Ostensible agency in Texas is based on the notion of estoppel, that is, a representation by the principal that causes justifiable reliance resulting in harm. *See Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984). To establish a claim of ostensible agency, a plaintiff must show (1) she had a reasonable belief in the agent's authority, (2) her belief was generated by some holding out, by act or neglect, of the principal, and (3) she was justified in relying on the representation of

38

authority.  *Valdez v. Pasadena Healthcare Mgmt., Inc.*, 975 S.W.2d 43, 46 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).  The inquiry focuses on the acts and conduct of the principal, not the agent.

Doe argues Pizza Hut held out MUY as its agent based on its national advertising, the requirement that MUY's local advertising be in an approved content and form, and Pizza Hut's exercise of control over MUY's use of Pizza Hut trademarks.  Doe argues that although MUY may engage in its own local advertising, all advertising materials used by MUY must "be in strict conformity with the standards, formats, and specimens contained in the Manual or otherwise established by Pizza Hut," and MUY may not "use any design, advertisement, sign, or form of publicity, unless first submitted to Pizza Hut and approved by Pizza Hut in writing[.]"  Doe also points to evidence that MUY cannot use "any trademark, service mark, trade name, or trade dress (including product package design) other than Pizza Hut Marks, without Pizza Hut's prior written consent" and "all exterior/interior signage, and all promotional and advertising materials [are] to bear the Pizza Hut Marks as instructed by [Pizza Hut]."

Doe's arguments concerning the use of advertising do not show an ostensible agency.  Doe appears to focus on MUY's, rather than Pizza Hut's, advertising activities and conduct.  As noted, ostensible agency focuses on the actions of the principal, not the agent. *Sampson*, 969 S.W.2d at 949 (holding that a "prerequisite

39

to a proper finding of apparent authority is evidence of conduct *by the principal*")
(emphasis added). Moreover, use of a national brand in general advertising is
indicative of a franchise relationship rather than an agency relationship. *See, e.g.,*
*Braucher ex rel. Braucher v. Swagat Grp., L.L.C*., 702 F. Supp.2d 1032, 1045 (C.D.
Ill. 2010) ("The use of the brand name shows a franchise relationship, but the
existence of a franchise does not create an agency."); *McKinnon v. YUM! Brands,*
*Inc*., Case No. 1:15-CV-00286-BLW, 2017 WL 3659166, at *9 (D. Idaho Aug. 24,
2017) ("[T]he majority of jurisdictions to have addressed the issue have concluded
that uniform product branding and marketing across a franchise does not, by itself,
create an objectively reasonable expectation that the franchisee functions as an agent
of the franchisor."); *see also Carris v. Marriott Int'l, Inc*., 466 F.3d 558, 562 (7th
Cir. 2006) ("Almost everyone knows that chain outlets, whether restaurants, motels,
hotels, resorts, or gas stations, are very often franchised rather than owned by the
owner of the trademark that gives the chain its common identity in the
marketplace."). It is also unclear how Pizza Hut's control of its own trademarks or
the requirement that MUY's local advertising conform to Pizza Hut standards
establishes Pizza Hut held MUY out as its agent. National advertising and use of
brand names do not, without more, represent to third parties that a franchisee acts as
the franchisor's apparent agent. *See, e.g.*, *Triplett v. Soleil Grp. Inc.*, 664 F. Supp
2d 645, 657 (D.S.C. 2009). And, under Texas law, evidence of a relationship does

40

not by itself evidence an agency relationship. *Kimbrell v. Memorial Hermann Hosp. System*, 407 S.W.3d 871 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding evidence of infomercial stating doctor was surgeon at Memorial Hermann, by itself, was not evidence that doctor was agent of hospital).

Doe points to her affidavit in which she attested that "[p]rior to placing my order … I was familiar with Pizza Hut television advertising. I placed my order because I was familiar with the Pizza Hut brand from advertising. At the time I placed my order, I did not know that the [Spring Restaurant] was owned by a franchisee in general, or by [MUY] in particular." Doe's affidavit does not identify any specific advertisement or explain how the television advertising she references establishes Pizza Hut held MUY out as its agent. We further note there is no evidence that the advertisement was placed by Pizza Hut rather than MUY. As we discussed, under the LFA, MUY is required to conduct local broadcast advertising, and, at its discretion, MUY may conduct local digital and social media advertising and local email marketing. Doe's statement that she was familiar with the Pizza Hut brand also does not establish reliance. She does not aver she would not have ordered from the Spring Restaurant without the advertising.

We thus hold Doe failed to produce more than a scintilla of evidence establishing (1) Pizza Hut or YUM had the right to control MUY with respect to MUY's screening, hiring, training, or supervision of Rachal or that Pizza Hut or

41

YUM exercised such control, (2) Pizza Hut or YUM engaged in affirmative conduct holding MUY out as its agent, or (3) Doe justifiably relied on any representation of authority. We conclude the trial court properly granted summary judgment on Doe's negligence claims against Pizza Hut and YUM.

## C. Gross Negligence

Doe contends she produced sufficient evidence to raise a genuine issue of material fact showing Pizza Hut and YUM were grossly negligent. As discussed, to prevail on a gross negligence claim, a plaintiff must prove (1) that, viewed from the standpoint of the defendant at the time of the occurrence, the defendant's act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the defendant had actual, subjective awareness of the risk involved, but still proceeded with conscious indifference to the rights, safety, or welfare of others. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(11); *Lee Lewis Constr.*, 70 S.W.3d at 785.

Doe argues the evidence shows "Defendants were grossly negligent in the hiring and retention of Rachal." She argues that when MUY hired Rachal, Pizza Hut and YUM were aware Rachal was applying to be a delivery driver. Doe argues that had Pizza Hut and YUM followed their own requirements and standards enacted to safeguard the public, the hiring of Rachal should have never happened. She claims Pizza Hut and YUM acted with careless disregard for the safety of Pizza Hut

42

customers when they hired Rachal to be a delivery driver without adhering to the requirements of performing the necessary safety, background, and sex offender checks. This argument is unavailing.

There is no evidence either Pizza Hut or YUM hired Rachal or were aware Rachal applied to be a delivery driver for MUY. Further, even if Doe argues Pizza Hut and YUM were grossly negligent based on an agency theory, we have already concluded Doe has not produced sufficient evidence to raise a fact issue on the elements of her ostensible agency theory. Thus, Doe failed to come forth with more than a scintilla of evidence Pizza Hut or YUM had an actual subjective awareness that hiring Rachal as a delivery driver would involve an extreme degree of risk but still proceeded with conscious indifference to Doe's safety. The trial court did not err in rendering summary judgment on Doe's gross negligence claims against Pizza Hut and YUM.

We overrule Doe's second issue.

**Motion for Continuance**

In her fourth issue, Doe contends the trial court abused its discretion in failing to grant her motion for continuance to conduct additional outstanding relevant discovery.

43

## A. Standard of Review

A trial court has broad discretion to deny or grant a motion for continuance. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *McAleer v. McAleer*, 394 S.W.3d 613, 617 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A trial court abuses its discretion when it acts in a manner so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *McAleer*, 394 S.W.3d at 617. We cannot substitute our judgment for that of the trial court in matters committed to the trial court's discretion. *Id.* In determining whether a trial court abused its discretion in denying a motion for continuance seeking more time for discovery, we consider the following non-exclusive list of factors: "the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

## B. Analysis

Doe contends that following Rachal's deposition, she served Rachal with specific discovery requests tailored to obtain information to defeat MUY's summary judgment motion and show MUY knew or should have known of Rachal's alleged dangerous propensity. The discovery included requests for production of Rachal's cell phone, laptop computer, certain medical records, and complete downloads of his Facebook, Twitter, Instagram, and Snapchat social media profiles. Doe also

served requests for admissions on Rachal that he (1) used his cell phone to speak to Doe and to his manager on the day of the alleged sexual assault, (2) used his laptop to view pornographic media, (3) had a membership and a subscription with pornographic websites, and (4) had accounts with Facebook, Twitter, Instagram, and Snapchat. Doe argues that because these requests were designed to procure information showing MUY knew or should have known of Rachal's alleged dangerous tendencies, the trial court abused its discretion by issuing its summary judgment ruling before allowing adequate time for the requested discovery to be completed.

The record reflects Doe served her additional discovery requests on Rachal on August 5, 2019—more than two months after the discovery period expired on May 31, 2019, and more than two years after she first filed suit on June 23, 2017. *See id.* (noting length of time case has been on file should be considered in determining whether trial court abused its discretion in denying continuance). Doe argues the requested discovery was material to show the extent of Rachal's contact with MUY on April 28, 2017, to establish MUY knew or should have known of Rachal's alleged intentions or dangerous propensity.

The record shows Doe's counsel did not obtain testimony from MUY's district manager, Carlos Argueta, or any other MUY employee on this matter to support this theory. Argueta could not recall the nature of his conversation with

45

Rachal on April 28, 2017. Thus, the fact Rachal may have called Argueta that night, without more, does not show the discovery requests were material. Finally, it does not appear Doe requested the trial court to modify the discovery deadlines to permit the additional discovery pursuant to Texas Rule of Civil Procedure 190.5. *See* TEX. R. CIV. P. 190.5 (allowing modification of discovery control plan). Under these circumstances, we cannot say the trial court abused its discretion in ruling on the motion for summary judgment without allowing the additional discovery.

We overrule Doe's fourth issue.

## Conclusion

We affirm the trial court's judgment.


Veronica Rivas-Molloy
Justice

Panel consists of Chief Justice Radack and Justices Rivas-Molloy and Guerra.

46