**Opinion issued November 8, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00527-CV

————————————

**STEPHEN PATRICK MCALEER, Appellant**

**V.**

**KAREN CHRISTOPHER MCALEER, Appellee**

---

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-25662**

---

## O P I N I O N

Appellant, Stephen Patrick McAleer, appeals from a decree of divorce dissolving the marriage between him and appellee, Karen Christopher McAleer. In seven issues, appellant argues the trial court abused its discretion by (1) denying

his motion for continuance; (2) characterizing the homestead as community property; (3) divesting him of other separate property, including personal household items; (4) denying his reimbursement claims; and (5) awarding attorney's fees to Karen.

We reverse and remand for a new trial on the characterization and division of property.

## Background

Stephen and Karen were married on May 1, 2008. Karen filed for divorce on April 23, 2010. Stephen answered on April 28, 2010. Within the first two months the suit was on file, Stephen had retained and terminated two attorneys. By July 9, 2010, Stephen had retained Stephanie Profitt as his attorney. Proffitt's husband unexpectedly died on September 1, 2010. Stephen subsequently retained Bruce Rokohl, who became the attorney of record for Stephen on September 27, 2010.

Either before or early in his representation of Stephen, Rokohl was diagnosed with testicular and liver cancer. Stephen soon began having trouble maintaining communication with Rokohl. During this time, Rokohl gave Stephen discovery requests sent by Karen. Stephen obtained the necessary documents and gave them to Rokohl. Rokohl never gave the documents to Karen and never returned them to Stephen.

On November 11, 2010, concerned about his inability to contact Rokohl, Stephen solicited the help of another attorney, John S. Cossum. On November 16, 2010, Cossum called and emailed Rokohl. The next day, Rokohl responded to Cossum by email. In the email, Rokohl acknowledged his health problems, explained that he expected to feel better in a few days, acknowledged that discovery deadlines were looming, and explained steps he had taken and planned to take steps to resolve the deadline issues.

Rokohl attended a hearing with Stephen on December 1. During that hearing, the trial court ordered Karen to produce certain documents to Stephen. It also closed the discovery period "other than the duty to supplement."[1] The court acknowledged that it had at least some familiarity with Rokohl's health problems by setting the trial date on February 14, 2011 because it was over a week after one of Rokohl's doctor's appointments.

That hearing was the last time Stephen or anyone else in the case heard from Rokohl. Stephen again solicited the help of Cossum. Cossum called, faxed, and emailed Rokohl multiple times but could not reach him. On December 30, 2010, Cossum filed a motion to substitute counsel and obtained a hearing date for January 19, 2011. Cossum continued to try to contact Rokohl, including driving to

---

[1]  These orders were not memorialized on paper until January 21, 2011.

his listed place of business, which was a home in Tomball. Cossum never received a response from Rokohl.

On January 14, 2011, Cossum filed a verified Opposed Motion for Continuance and Motion to Permit Late Filing of Discovery Responses. In that motion, Cossum explained that he had just been retained for a trial that was set for February 14, 2011; opposing counsel had been reluctant to share discovery documents since the motion to substitute had not yet been granted; he was unable to issue subpoenas for necessary documents because the motion to substitute had not yet been granted; and he had unsuccessfully contacted Rokohl numerous times to get Stephen's case file, which included discovery documents. The motion also stated that no discovery responses had been filed on behalf of Stephen, presumably because of Rokohl's ill health. A continuance was specifically requested "to allow sufficient time for [Cossum] to respond to discovery, review discovery, and to issue any subpoenas necessary."

On January 19, 2011, the trial court granted the motion to substitute Cossum as Stephen's attorney of record. Between January 24, 2011 and February 9, 2011, Stephen filed five certificates of written discovery in response to Karen's request for production of documents and tangible things, a notice of filing of amended sworn inventory and appraisement, a notice of filing of proposed property division, and a notice of filing of sworn inventory and appraisement.

4

While there is no indication in the record whether the trial court ruled on the motion for continuance, Stephen filed an opposed motion to reconsider the motion for continuance and to permit the late filing of discovery responses on February 10, 2011. This motion reiterated that opposing counsel did not share discovery documents until on or about January 14, 2011 and that Cossum was unable to issue subpoenas to get necessary documents until the motion to substitute was granted. This motion was accompanied by sworn affidavits from both Cossum and Stephen, which detailed their unsuccessful attempts at retrieving Stephen's documents from Rokohl.

At trial on February 14, 2011, Cossum re-urged his motion to reconsider the motion for continuance. Cossum stated that he had only been the attorney of record for approximately twenty-five days and that Stephen had given many documents that were subject to discovery requests to Rokohl and those documents were never seen again. Cossum stated that he and Stephen made over a dozen attempts to contact Rokohl, including going to Rokohl's home. They were unsuccessful, presumably due to Rokohl's testicular and liver cancers. Because they were unable to contact him, Stephen was unable to retrieve all of the discovery documents that had been turned over to Rokohl. Cossum proceeded to describe the different documents that could be obtained if Stephen were granted a

continuance and how they were pertinent to the merits of the proceeding. The trial court denied the continuance, and the trial proceeded.

In its findings of fact and conclusions of law, the trial court found, in pertinent part:

12. Stephen failed to timely designate any expert witness in response to proper discovery requests and thereafter failed to establish good cause for his failure to do so and/or a lack of unfair surprise to Karen.

13. Stephen failed to timely respond to and/or supplement discovery in response to proper discovery requests and thereafter failed to establish good cause for his failure to do so and/or a lack of unfair surprise to Karen.

14. Stephen failed to take the necessary steps to secure a more current fair market value appraisal on [Stephen and Karen's residence] despite the trial court's order allowing him leave to do so.

15. Stephen generally abused the discovery process by (a) failing to cooperate with timely responses to discovery requests while at the same time insisting upon documentation and information from Karen; (b) untimely supplementing voluminous amounts of discovery during the 30 day period immediately preceding trial; and (c) failing to supply complete and/or sufficient documentation and information to . . . the agreed upon joint tracing expert.

. . . .

27. Prior to the trial of this cause on February 14, 2011, Stephen sought and obtained three continuances of existing trial settings.

**Motion for Continuance**

In his sixth issue on appeal, Stephen argues that the trial court erred in denying his motion for continuance because "his two previous lawyers suffered extenuating circumstances."

## A.    Standard of Review

An appellate court reviews the trial court's ruling on a motion for continuance for an abuse of discretion. *See Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)). The trial court has broad discretion to deny or grant a motion for continuance, and the appellate court will not reverse the trial court's decision absent a clear abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *see also Roob v. Von Beregshasy*, 866 S.W.2d 765, 767 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Considering the circumstances at the time the motion is denied, a trial court abuses its discretion if it acts in an arbitrary and unreasonable manner without reference to any guiding rules or principles. *Landers*, 257 S.W.3d at 747. The appellate court may not substitute its judgment for that of the trial court in matters committed to the trial court's discretion. *In re Spooner*, 333 S.W.3d 759, 763 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding).

## B.     Analysis

When a motion for continuance is based on the lack of counsel, the movant "must show that the failure to be represented at trial was not due to their own fault or negligence." *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).  When the motion for continuance is based on inadequate discovery, the appellate court considers the following non-exclusive factors: (1) the length of time the case has been on file; (2) the materiality of the discovery sought; and (3) whether due diligence was exercised in obtaining discovery.  *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

We begin by noting that the simple number of times Stephen changed attorneys does not support the denial of the motion for continuance.  "Serial hiring and firing of attorneys for dilatory purposes would be a legitimate concern to be balanced against a requested continuance in appropriate circumstances." *Harrison v. Harrison*, 367 S.W.3d 822, 834–35 (Tex. App.—Houston [14th Dist.] 2012, pet. filed).  We hold that there is no evidence that Stephen's changing of attorneys five times by the time of the trial was done for a dilatory purpose.  While it is true that Stephen had retained and terminated representation with two attorneys within the first two months of trial, we find no support in the record for faulting Stephen for the loss of his next two attorneys—retained for nearly two-thirds of the time that the case was pending and that discovery was open.  There is no indication in the

8

record that Proffit's representation of Stephen was inadequate during the time of her representation. But we cannot conclude that Stephen's decision to seek new counsel after the sudden and unexpected death of Proffit's husband was based on a dilatory purpose.

More importantly, we find no reason to fault Stephen for his decision to retain Rokohl or for Rokohl's subsequent unresponsiveness. Regardless of when Rokohl was diagnosed with cancer, there is no indication in the record that Stephen knew of the diagnoses prior to retaining him or that Stephen intentionally used his attorney's condition to cause delay. Instead, the record indicates that Rokohl soon became difficult to contact, though Stephen actively attempted to maintain contact. During the times that he did communicate with Stephen, Rokohl assured Stephen that he would be able to handle the representation.

During one of his meetings with Rokohl, Stephen gave Rokohl "a large plastic bin that contained all of the original documents responsive to the requests for production with the understanding that Mr. Rokohl would then copy and forward them to" Karen's attorney. Rokohl never produced the documents to Karen and never returned them to Stephen.

During the time that Rokohl was listed as the attorney of record for Stephen, the trial court closed the discovery period "other than the duty to supplement." After the discovery period was closed, Stephen never heard from Rokohl again.

9

The record shows that Stephen attempted repeatedly throughout the period of Rokohl's representation to maintain communication with Rokohl. He even obtained the help of Cossum to reach Rokohl and to determine whether Rokohl could properly continue in his representation. After Rokohl became completely unresponsive, Stephen retained Cossum as his counsel. While the trial court allowed Cossum to substitute as Stephen's counsel about a month before trial, it denied Cossum's requests for continuance or late filing of discovery.

While not completely on point, we find the Supreme Court of Texas's opinion in *Villegas* instructive. Villegas sued the Carters over their foreclosure on his property. *Villegas*, 711 S.W.2d at 625. Villegas was represented by two attorneys. *Id.* Suit was filed on June 25, 1984, and trial was set for October 25th. *Id.* One of Villegas's attorneys withdrew from the case on October 3rd. *Id.* His other attorney moved to withdraw on October 5th, and the trial court granted it on October 23rd. *Id.*

Villegas appeared for trial two days later. *Id.* He did not have an attorney and asked the court for a continuance to obtain one. *Id.* He informed the court that he had learned of his second attorney's motion to withdraw only six days before; that the attorney would not turn over his file and important evidence; and that he had contacted another attorney to take the case, but the attorney refused to take the

10

case before reviewing the file. *Id.* at 625–26. The trial court denied the continuance. *Id.* at 626.

In its analysis, the Supreme Court of Texas recognized, "The right to counsel is a valuable right; its unwarranted denial is reversible error." *Id.* It then held that, "when a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Id.* It also held that, before an attorney is allowed to withdraw, the court should ensure that the attorney has complied with the rules of professional conduct, such as the obligation to take reasonable steps to avoid foreseeable prejudice to the rights of the client by withdrawal from representation. *Id.* The court ultimately held that the trial court abused its discretion in denying the motion for continuance "because the evidence shows that Villegas was not negligent or at fault in causing his attorney's withdrawal," that Villegas did not have sufficient time to obtain a new attorney, and that the new attorney did not have enough time to investigate the case and prepare for trial. *Id.*

Two obvious distinctions between *Villegas* and this case are how close to the trial date Villegas's attorneys withdrew and that Villegas was forced to proceed in the trial pro se despite his expressed desire to be represented. *Id.* at 625–26. In contrast, Stephen obtained an attorney who became the attorney of record almost a month before trial. Nevertheless, the court held that when the trial court allows

11

one attorney to withdraw and another attorney to enter the case, "it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Id.* at 626. Our inquiry turns, then, to whether Cossum had a sufficient amount of time to investigate the case and prepare for trial.

We also note that Rokohl was in possession of a large amount of Stephen's documents at the time he became incommunicative. Those files had never been produced to Karen. By the time Cossum became Stephen's attorney of record for the case, the trial court's order precluded any further production of records "other than the duty to supplement" what had already been produced. This effectively barred Stephen from using the documents he was then busily trying to obtain duplicates of from other sources.

In addition, for the final two months of the discovery period—almost 30 percent of the entire discovery period—Stephen had an attorney that was rarely communicating with him and taking little action to obtain discovery on Stephen's behalf. Effectively during this period, Stephen was in a worse situation than if he had been representing himself pro se. Temporary orders entered in the case prohibited Stephen from communicating with Karen, and the Texas Disciplinary Rules of Professional Conduct prevented Karen's attorney from communicating with Stephen. *See* Tex. Disciplinary Rules Prof'l Conduct R. 4.02, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (Vernon Supp. 2011) (Tex. State

Bar R., art. X, § 9). Accordingly, there was little, if anything, that Stephen could do without Rokohl during the last two months of the discovery period to seek or produce discovery.

Cossum stated in his motion for continuance that Stephen needed more time to conduct discovery. As we have indicated, the non-exclusive factors a court should consider for a motion for continuance based on the need to perform more discovery are (1) the length of time the case has been on file; (2) the materiality of the discovery sought; and (3) whether due diligence was exercised in obtaining discovery. *Joe*, 145 S.W.3d at 161.

The discovery period was open for eight and one-half months. Stephen disclosed to the trial court in his motion for continuance and at the hearing on the motion that he was still trying to recreate the large set of documents that he had given to Rokohl. Cossum explained to the trial court that he could not subpoena bank documents until he was the attorney of record and, based on the law to obtain such documents, did not have enough time to acquire the documents. Cossum argued that lack of those documents prevented Stephen from tracing the funds in the relevant accounts. Stephen told the court that his original copy of those documents had been provided to Rokohl. Cossum also argued that Karen had produced documents to an expert on reimbursement claims that had not been produced to Stephen.

As Karen's attorney recognized in the hearing on the motion for continuance, "[t]he complicated issues [in this divorce proceeding] are strictly tracing the documents." The documents Stephen turned over to Rokohl, the documents that he was subsequently trying to recreate, and the documents that Stephen wanted to obtain from Karen were all, then, highly material to the key issues in the divorce.

While it does not appear that due diligence was exercised in obtaining and producing documents, there is no indication that any lack of diligence was attributable to Stephen. Accordingly, we find no support in the record for the trial court's findings that Stephen failed to timely designate an expert witness, respond to and supplement discovery requests, and secure his own fair market value appraisal of his and Karen's home. Similarly, we find no support for the findings that Stephen abused the discovery process by failing to cooperate with timely responses to discovery requests and "untimely supplementing voluminous amounts of discovery during the 30 day period immediately preceding trial." The only indication we have from the record is that Stephen gave the "voluminous amounts of discovery" to his attorney in a timely manner, but, through no fault of Stephen's, the documents were never produced to Karen. We find no reason to fault him for trying to recreate the large volume of documents and producing them to Karen when he could.

The trial court also found that Stephen failed "to supply complete and/or sufficient documentation to . . . the agreed upon joint tracing expert." Stephen does not challenge this finding and there is some evidence in the record supporting this finding. Accordingly it is binding upon us. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (holding unchallenged findings are binding on appellate court unless contrary is established as matter of law or if there is no evidence to support finding).

This finding, standing alone, however, is not sufficient to outweigh the extremely difficult situation that Stephen found himself in through no apparent fault of his own. For the final two months of discovery, he had an attorney who, despite repeated reassurances, was not issuing discovery requests or responding to the requests for which Stephen had given him documentation. After the discovery period closed, Stephen's attorney became completely incommunicative, despite having a large volume of Stephen's records. Stephen was forced to hire another attorney, get that attorney brought into the case, and work to prepare for trial despite his severe handicap on discovery relevant to the main issues in the divorce proceedings. Despite Stephen and Cossum's attempts to recreate the missing documents, the trial court would not allow the late filing of the documents. We hold, given Stephen's circumstance with an uncommunicative attorney in possession of Stephen's documents and given the attorney's failure to conduct and

15

complete discovery, that the trial court abused its discretion in denying Stephen's motion for continuance. For the same reasons, we hold that the Stephen was harmed by the denial of the motion for continuance.

We sustain Stephen's sixth issue. Because Stephen's remaining issues would not result in greater relief than what we are granting under this issue, we do not need to reach them. *See* TEX. R. APP. P. 47.1

## Conclusion

We reverse the portion of the judgment that characterizes and divides the property and remand for a new trial on those issues.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.