Opinion issued June 23, 2022



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00723-CV

_____

## IN THE INTEREST OF H.D.D.B., A CHILD

---

**On Appeal from the 328th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 19-DCV-268152**

---

## MEMORANDUM OPINION

Appellant J.A.B. ("Father"), pro se and incarcerated, appeals the trial court's order terminating his parental rights to his child in a private termination suit brought by the child's mother, appellee C.N.B. ("Mother). Father contends the trial court committed various errors that require reversal of the order terminating his parental rights. We affirm.

## Background

Father and Mother, divorced, are the child's biological parents. In October 2019, Mother petitioned to terminate Father's parental rights on several grounds, alleging that Father:

- knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being;

- engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being;

- failed to support the child in accordance with his ability;

- knowingly engaged in criminal conduct that resulted in his imprisonment and inability to care for the child for not less than the two years prior; and

- attempted to solicit the murder of Mother.

Mother attached to her petition a copy of a protective order she obtained against Father in February 2019, designating both Mother and the child as protected persons. The protective order, which is effective for 99 years, recites the issuing court's findings that Mother was the victim of stalking and family violence committed by Father, that Father was likely to commit additional acts of family violence in the future, and that the protective order was necessary for Mother's and the child's safety and welfare. Among other things, the protective order prohibits Father from communicating with Mother or the child except through an attorney or

other court-appointed person, going to or near any location where Mother and the child were known by Father to be, engaging in threatening or harassing conduct, committing physical violence against Mother or the child, and removing the child from Mother's possession.[1]

Father, who is incarcerated, filed a pro se answer opposing the termination of his parental rights. He also moved for the appointment of counsel to represent him, asserting that he was indigent and unable to adequately defend his parental rights because of his incarceration and inability to access the law library for more than "2 [hours,] 4 days a week." When the trial court did not rule on this motion, Father moved a second time for the same relief. Father asserted in his second motion that Mother's allegations were false and that the guarantees in the Sixth and Fourteenth Amendments to the United States Constitution required the appointment of counsel. Although both motions asserted Father was indigent, Father did not attach an affidavit or other proof of indigence to either motion. The trial court signed a written order denying Father's request for appointment of counsel.

Father filed additional pretrial motions, including motions for a speedy trial, for a bench warrant to appear in person at the termination hearing, for funding to hire a private investigator to locate witnesses and obtain evidence, and for assistance

---

[1] This Court affirmed the protective order in a separate appeal. *See Beach v. Beach*, No. 01-19-00123-CV, 2020 WL 1879553, at *6 (Tex. App.—Houston [1st Dist.] Apr. 16, 2020, pet. dism'd w.o.j.) (mem. op.).

subpoenaing witnesses. The record does not contain any oral or written rulings on these motions.

The trial court appointed an amicus attorney to represent the child's best interest and set Mother's petition to terminate Father's parental rights for a hearing on August 17, 2020. But the trial court did not proceed with a hearing on that date. A docket entry explains:

> Hearing on final trial was to be via [Z]oom. However, counsel appeared and stated that [Father] has contracted the corona and is in isolation. The [Z]oom setup is in the law library, and as he is in [q]uarantine, he cannot appear. Counsel will need to reset with proper notice.[2]

---

[2] On March 13, 2020, the Governor of the State of Texas declared a state of disaster in the State's 254 counties in response to the imminent threat of the COVID-19 pandemic. The Texas Supreme Court issued several emergency orders on the conduct of court proceedings during the disaster. The twenty-sixth emergency order was in effect at the time of the hearing on Mother's petition to terminate Father's parental rights. *See Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster*, 609 S.W.3d 135 (Tex. 2020). It provided in part:

> 2. Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:
>
> . . .
>
> c. except as this Order provides otherwise, allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means[.]

*Id.* at 135.

The termination hearing was reset for the next month and proceeded via Zoom video conference on September 23, as permitted by the Texas Supreme Court emergency orders on the conduct of court proceedings during the COVID-19 pandemic.

During the announcement of the parties, the trial court stated for the record that Father had notice of the setting and access via a Zoom set up in the prison law library but was not present. A correctional officer at the facility where Father was incarcerated testified under oath on cross-examination by Mother's attorney and the child's amicus attorney that Father was aware of the proceeding and refused to participate despite the correctional staff's efforts to encourage his attendance. The correctional officer stated he was unaware of any physical impairment that would prevent Father from attending the hearing via Zoom and that Father appeared to be of sound mind and had not been influenced against attending. The trial court ordered the correctional officer to maintain the Zoom connection in case Father changed his mind and decided to attend. Father did not make an appearance during the hearing.[3]

Mother was the only other witness to testify at the termination hearing. She explained that the child was born during her marriage to Father, and that she divorced Father on the ground of insupportability and because of Father's cruel treatment toward her and his felony conviction. Mother was designated as the child's sole

---

[3] During the termination hearing, the trial court inquired multiple times whether Father had any cross-examination or wished to present his own witnesses. There was no response from Father to any of the trial court's inquiries.

5

managing conservator, and Father was named a possessory conservator with rights of supervised visitation. Mother testified that the divorce court found that Father had a "history or pattern of family violence" and permanently enjoined Father from causing or threatening physical or bodily harm to Mother, threatening Mother, communicating with Mother except through an attorney, and coming within 200 yards of Mother's residence or the child's school.

Mother's testimony addressed the pattern of family violence in her relationship with Father. She stated that in the months before the child was born, at least seven incidents involving physical violence by Father were reported to the police. The violence associated with most of these incidents was directed at Mother. In one incident when Mother was pregnant with the child, Father repeatedly punched Mother in the face and deflated the tires on Mother's car to prevent her from fleeing the family home.

Father physically assaulted Mother again, when the child was three months old and recovering from a surgical procedure to remove a subarachnoid cyst.[4] When the assault began, Mother was holding and feeding the child. She was able to place the child in a bassinet before Father grabbed her by the throat, strangled her until she

_____

[4] Mother explained that a prenatal ultrasound showed the child had a "significant subarachnoid cyst that . . . cross[ed] lobes of the brain," requiring the child to be delivered by cesarean section and undergo surgery four days after birth. The surgical procedure was a cerebral penetration in which the child's doctor "burned holes in the walls of the cyst to let the fluid drain[.]"

"pass[ed] out," and threatened to kill her if she "ever [tried] to take [the child] away from him." A police report for this assault noted a "significant amount" of blood on Mother's face and clothing and a "severe laceration" extending from the right corner of Mother's mouth to her right nostril, through which Mother's teeth and gums were visible when her mouth was closed. This injury required ten stitches to Mother's face. Mother attributed Father's violent conduct to alcohol abuse.

Father pleaded guilty to a family violence charge for this assault and was sentenced to ten years' confinement. At the time of the termination hearing, Father was serving that sentence. During his confinement, Father was indicted for the offense of solicitation of capital murder based on allegations that he asked another inmate to kill Mother. Mother testified that officials discovered the solicitation plot because they were monitoring Father's correspondence to prevent him from attempting to contact Mother through other inmates. Father had not been tried or convicted on this charge at the time of the hearing, but Mother testified that Father, if convicted, could be sentenced to life in prison. In addition, Mother testified that Father is a registered sexual offender and has a history of other crimes and convictions, including a charge of "rape by force" of a minor.

Mother explained that she obtained the 99-year protective order out of fear for her own and the child's safety. Despite her efforts to avoid contact with Father and the court orders prohibiting such contact, Father had tried to contact Mother by mail,

7

by phone, and through other inmates. Because of Father's "tormenting" conduct, Mother moved with the child and has tried to keep their new address out of the public record. Still, Mother anticipated Father would continue to "harass" her.

Because of his incarceration, Father has not seen the child, who was five years old at the time of the termination hearing, since the child was an infant. According to Mother, Father had not provided any emotional or financial support for the child and owed more than $11,000 in unpaid child support. In her view, Father's involvement in the child's life would be detrimental to the child's well-being, and termination of Father's parental rights was in the child's best interest. Mother explained that she had done "everything in [her] power" to provide a safe and stable home for the child and to meet the child's physical and emotional needs while parenting on her own. She described the child as happy, smart, and full of energy.

After the hearing, the trial court entered an order terminating Father's parental rights on several grounds,[5] finding by clear and convincing evidence that Father:

- knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child;

---

[5] The order terminating Father's parental rights also included the trial court's finding that Father made a general appearance in the suit, was "duly noticed of the proceedings," and "had the availability and means to appear but elected not to participate in the trial."

- engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child;

- failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of Mother's petition; and

- knowingly engaged in criminal conduct that resulted in his conviction, imprisonment, and inability to care for the child for not less than two years from the date the petition was filed.

*See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (F), (Q). The trial court also found that termination of the parent-child relationship was in the child's best interest. Father appealed.

## Issues on Appeal

As with many pro se briefs, Father's briefing on appeal fails to "state concisely all issues or points presented for review."[6] TEX. R. APP. P. 38.1(f). In addition to deficiencies of form, Father's briefs do not contain any "clear and concise argument" to support his contentions or "appropriate citations to authorities and to the record," as required by the Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1(i);

---

[6] Father filed his opening brief as appellant on November 30, 2020 and a document captioned as an "amended brief" on May 24, 2021, more than two months after Mother filed her brief as appellee and only nine days before the submission date for this appeal. Because this latter brief is responsive to Mother's briefing, we construe it as a supplemental or reply brief in lieu of an amended brief. *See* TEX. R. APP. P. 38.1 (rules for appellant's brief), 38.9 (briefing rules to be construed liberally); *see also Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) (appellate courts liberally construe pro se pleadings and briefs but hold pro se litigants to same standards as licensed attorneys). Father has also filed various correspondence containing argument in support of his issues on appeal.

*Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that inadequate briefing results in waiver). Given the significant deprivation of rights that results from the termination of the parent-child relationship, however, we construe Father's briefs liberally to reach his appellate issues on the merits, where possible. *See* TEX. R. APP. P. 38.9; *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver."); *In re Marriage of Jordan*, 264 S.W.3d 850, 852 n.1 (Tex. App.—Waco 2008, no pet.) ("Because Marguerite is representing herself, we have strived to construe her appellate pleadings with patience and liberality."), *disapproved on other grounds by*, *In re Jordan*, 487 S.W.3d 762, 765 n.1 (Tex. App.—Waco 2016, pet. denied); *see also Santosky v. Kramer*, 455 U.S. 745, 759 (1982) (acknowledging proceedings to terminate parental rights involve a "unique kind of deprivation"). Despite our liberal reading of Father's briefs, we note that pro se litigants like Father are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978); *Brown v. Tex. Emp't Comm'n*, 801 S.W.2d 5, 8 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

Reading Father's briefs liberally, we understand Father to complain that the trial court erred by:

1. Terminating Father's parental rights based on Mother's testimony about the violent and harassing nature of her relationship with Father;

2. refusing to appoint counsel to represent Father at the termination hearing;

3. proceeding with the termination hearing when Father was absent due to illness; and

4. failing to rule on certain pretrial motions.

In addition, during the pendency of the appeal, Father filed with this Court a motion requesting a new trial "due to newly discovered evidence," which we address separately in this opinion.

## Sufficiency of the Evidence

In his first issue, Father contends the trial court erred by terminating his parental rights based on Mother's testimony, which Father asserts was riddled with false allegations against him and rested on exaggerated statements about the extent of his violent conduct toward Mother and her injuries. We construe this as a challenge to the legal and factual sufficiency of the evidence that Father engaged in conduct that endangered the child's physical or emotional well-being under Section 161.001(b)(1)(E) of the Family Code. *See* TEX. FAM. CODE § 161.001(b)(1)(E) (allowing termination of parent-child relationship where clear and convincing evidence shows parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child"); *see also Perry*, 272 S.W.3d at 587.

11

## A.    Standard of Review

A parent's rights to the "companionship, care, custody, and management" of their children are constitutional interests "far more precious than any property right." *Santosky*, 455 U.S. at 758–59; *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). A termination decree is final, irrevocable, and permanently divests a parent of all legal rights, privileges, duties, and powers with respect to the parent-child relationship, except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Id.* But "the rights of natural parents are not absolute," and "the rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quotation omitted). Recognizing that parents may forfeit their parental rights by their acts or omissions, the primary focus of any termination suit is protection of the child's best interest. *Id.*

For a trial court to terminate a parent-child relationship, the party seeking termination must prove that (1) the parent's actions satisfy one predicate ground listed in Section 161.001(b)(1) of the Texas Family Code and (2) termination is in the child's best interest. *See* TEX. FAM. CODE § 161.001(b). Due to the severity and permanency of the termination of parental rights, the evidence supporting termination must meet the threshold of clear and convincing evidence. *See id.*; *In re*

12

*J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This is an intermediate standard that falls between "preponderance of the evidence" used in ordinary civil proceedings and "reasonable doubt" used in criminal proceedings. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

The heightened burden of proof in termination proceedings results in a heightened standard of review. *In re S.R.*, 452 S.W.3d 351, 358 (Tex. App.— Houston [14th Dist.] 2014, pet. denied). When the legal sufficiency of the evidence supporting termination is challenged, the reviewing court looks at all the evidence in the light most favorable to the termination finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d at 266. The court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. It should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. If, after conducting a legal sufficiency review of the record evidence, the court determines that no reasonable factfinder could have

13

formed a firm belief or conviction that the matter to be proved was true, the court must conclude that the evidence on that matter is legally insufficient. *In re J.O.A.*, 283 S.W.3d at 344–45; *In re J.F.C.*, 96 S.W.3d at 266.

Only when the factual sufficiency of the evidence is challenged does the reviewing court review disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003). The court of appeals should "explain in its opinion why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding." *In re J.O.A.*, 283 S.W.3d at 345 (quotation omitted).

## B.    Endangering Conduct

Although the trial court made four predicate findings under Section 161.001(b)(1) in this case, Father's brief can be read as reasonably challenging only one of the predicate findings—the finding that Father "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child" (the "Subsection (E) finding"). *See* TEX. FAM. CODE § 161.001(b)(1)(E).

Ordinarily, when an appellant whose parental rights have been terminated challenges less than all the predicate findings on appeal, we may affirm on the unchallenged ground. *See In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (court of appeals may affirm termination judgment so long as one termination ground finding and best interest finding are based on sufficient evidence); *In re A.V.*, 113 S.W.3d at 362 (only one predicate finding is necessary to support a judgment of termination when factfinder also determines termination is in child's best interest). Given the potential collateral consequences of a Subsection (E) finding, however, we will evaluate the legal and factual sufficiency of the evidence to support such a finding in this case. *See* TEX. FAM. CODE § 161.001(b)(1)(M) (allowing termination of parental rights where parent "had his or her parent-child relationship terminated with respect to another child based on a finding that parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another

15

state"); *In re N.G.*, 577 S.W.3d at 237 ("[B]ecause section 161.001(b)(1)(M) alone provides a sufficient basis to terminate parental rights based on a previous section 161.001(b)(1)(D) or (E) finding, the due process concerns, coupled with the requirement of a meaningful appeal, mandate that if a court of appeals affirms the termination on either of these grounds, it must provide the details of its analysis.").

Within the context of Subsection (E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). To "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). It is not necessary to establish that a parent intended to endanger a child to support termination under Subsection (E). *In re M.C.*, 917 S.W.2d at 270. Nor is it necessary to establish that the parent's conduct was directed at the child or caused actual harm; rather, it is sufficient if the parent's conduct endangers the child's well-being. *See Boyd*, 727 S.W.2d at 533; *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Danger to a child's well-being may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533; *In re K.P.*, 498 S.W.3d 157, 171 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and

16

emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). A parent's past endangering conduct may support an inference that the conduct may recur and jeopardize the child's present or future physical or emotional well-being. *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.); *see also In re A.D.M.*, No. 01-16-00550-CV, 2016 WL 7368075, at *6 (Tex. App.—Houston [1st Dist.] Dec. 20, 2016, pet. denied) (mem. op.).

Domestic violence may be considered evidence of endangerment. *In re S.C.F.*, 522 S.W.3d 693, 700 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Violent conduct by a parent toward the other parent may produce an environment that endangers the physical or emotional well-being of a child. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The endangerment analysis may also consider a parent's criminal record. *Boyd*, 727 S.W.2d at 533–34 ("[I]mprisonment is certainly a factor to be considered by the trial court on the issue of endangerment."). While "mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child," "if the evidence, including imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding [under Subsection] (E) is supportable." *Id.*

Here, Father endangered the child by physically abusing Mother. Mother testified that Father committed multiple acts of family violence against her, including physical assaults during her pregnancy with the child and after the child's birth. *See In re S.L.W.*, 529 S.W.3d 601, 610–12 (Tex. App.—Texarkana 2017, pet. denied) (evidence father assaulted mother during pregnancy and after birth supported termination of father's parental rights under Subsection (E)). One instance of physical abuse began while the child, only three-months old, was in Mother's arms. This incident involved strangulation and resulted in a "severe laceration" to Mother's face, and it occurred when the child was particularly vulnerable due to tender age and post-surgical status.

In addition, although Father's history of violent conduct has been the basis of more than one court order designed to avoid further harm to or harassment of Mother, the record indicates that Father has disregarded the terms of those orders by attempting to contact Mother by various means, including through other inmates. Mother testified that, despite his imprisonment for the family violence committed against her and her status as the child's sole caretaker, Father has continued to engage in endangering conduct by attempting to solicit her murder at the hands of another inmate.

Father asserts on appeal that he has evidence Mother's testimony about his abusive conduct was fabricated or at least exaggerated, but no such evidence was

presented at the termination hearing. We will not second guess the trial court's assessment that the evidence actually presented—Mother's testimony—was credible. *See In re H.R.M.*, 209 S.W.3d at 109; *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998) (appellate court may not pass upon witness's credibility or substitute its judgment for that of factfinder).

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that the trial court could have formed a firm belief or conviction that Father engaged, or knowingly placed the child with persons who engaged, in conduct that endangered the child's physical and emotional well-being. *See* TEX. FAM. CODE § 161.001(b)(1)(E). And viewing the evidence in a neutral light, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Father engaged, or knowingly placed the child with persons who engaged, in conduct that endangered the child's physical and emotional well-being. *See id.* We therefore hold that the evidence is both legally and factually sufficient to support the trial court's termination of Father's parental rights under Subsection (E). *See id.*

We therefore overrule Father's first issue.

## Appointment of Counsel

In his second issue, Father contends the trial court erred by refusing him court-appointed counsel. As noted above, Chapter 161 of the Texas Family Code authorizes the termination of a parent-child relationship through civil actions. *See*

19

TEX. FAM. CODE § 101.032(a). Such suits may be initiated by private parties, including the child's other parent, or by the government itself, often acting through the Child Protective Services Division of the Texas Department of Family and Protective Services. *See* TEX. FAM. CODE §§ 102.003(a)(1) (suits by parent of child), 102.003(a)(5) (suits by government entity). The Family Code imposes different procedural rules for private and government-initiated actions. Indigent parents are statutorily entitled to counsel, at public expense, in government-initiated suits. *See id.* §§ 107.013(a)(1), 107.015(c). The same is not true in private suits, where the appointment of counsel may occur in the trial court's discretion but is not mandatory. *See, e.g., id.* §§ 107.001(1), .015(a), (b), .021 (contemplating, in private termination suit, permissive appointment of attorney ad litem for parent and payment of such attorney ad litem "by one or more of the parties"); TEX. GOV'T CODE § 24.016 ("A district judge may appoint counsel to attend to the cause of a party who makes an affidavit that he is too poor to employ counsel to attend the cause."); *see also In re E.R.W.*, 528 S.W.3d 251, 259 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (explaining permissive appointment "is discretionary and does not create a right to . . . counsel or assistance of counsel"); *In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. denied) ("Indigent parents in a private termination of parental rights suit possess no statutory right to appointed counsel while indigent parents in a CPS-initiated suit do."); *In re T.L.B.*, No. 07-07-0349-CV, 2008 WL

20

5245905, at *1 n.3 (Tex. App.—Amarillo Dec. 17, 2008, no pet.) (mem. op.) (noting although respondent in private termination suit was indigent, he was not entitled to appointed representation).

Here, however, Father did not argue his entitlement to court-appointed counsel under any discretionary statutory scheme. Instead, he argued that he was constitutionally entitled to appointed counsel under the Sixth and Fourteenth Amendments to the United States Constitution.[7] *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."); U.S. CONST. amend. XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law").

The Sixth Amendment's right to counsel is not implicated because it generally is limited to criminal proceedings, and we have found no authority extending its guarantee to parental-rights termination cases that are not state-initiated and thus do not involve a statutory right to appointed counsel. *See* U.S. CONST. amend. VI; *see also In re M.S.*, 115 S.W.3d at 544–45 (holding indigent parents in state-initiated

---

[7] Because Father does not rely on any state constitutional provision, our analysis is limited to federal constitutional provisions. We note, however, that our own review of the case law did not reveal any Texas case extending a state constitutional provision to guarantee the right of court-appointed counsel in private litigation between parents. In addition, in claims of procedural due process, the Texas Supreme Court has found no meaningful distinction between Texas's protection of due course of law and the federal constitution's guarantee of due process. *See Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

suits to terminate parental rights may challenge counsel's performance in representation by asserting ineffective-assistance claim under Sixth Amendment).

The Fourteenth Amendment's due process clause, as interpreted by the United States Supreme Court, does have some relevance in this context. *See, e.g.*, *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24–25 (1981). While the Supreme Court has noted the fundamental nature of the interests at stake in state actions to terminate parental rights, it held in *Lassiter* that the United States Constitution does not require the appointment of counsel for parents in every parental-termination proceeding. *Id.* at 27, 31. The *Lassiter* Court noted it was "neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements." *Id.* at 32 (quotation omitted). The Court instead left the decision of whether due process requires appointment of counsel in a particular case to be decided by the trial court, subject to appellate review. *Id.* The Court instructed that such decisions should be made by considering whether the competing interests set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976) (the "*Eldridge* factors"), weigh in favor of appointing counsel. *Lassiter*, 452 U.S. at 27 (parent who appears without counsel must overcome presumption that appointment of counsel is not required in civil cases using *Eldridge* factors, which include: (1) private interests at stake;

22

(2) government's interest; and (3) risk that the procedures used will lead to erroneous results).

Consistent with this directive, Texas courts have applied the *Eldridge* factors to determine whether due process requires the appointment of counsel for a parent in private termination suits. *See In re J.E.D.*, No. 11-19-00166-CV, 2019 WL 5617645, at \*3 (Tex. App.—Eastland Oct. 24, 2019, no pet.) (mem. op.) (appointment of counsel may be required by due process in private termination, "[e]ven though not mandated by statute"); *see also In re L.F.*, No. 02-19-00421-CV, 2020 WL 2201905, at \*11–13 (Tex. App.—Fort Worth May 7, 2020, no pet.) (mem. op.) (trial court's failure to appoint counsel in private termination was not due process violation); *In re T.L.W.*, No. 12-10-00401-CV, 2012 WL 1142475, at \*1–3 (Tex. App.—Tyler Mar. 30, 2012, no pet.) (mem. op.) (same); *In re R.J.C.*, No. 04-09-001006-CV, 2010 WL 816188, at \*4 (Tex. App.—San Antonio Mar. 10, 2010, no pet.) (mem. op.) (same).

We do not reach that analysis here, however, because Father did not establish indigency before the trial court terminated his parental rights in September 2020. Although Father alleged he was an "indigent inmate" in two pretrial motions seeking the appointment of counsel, those motions were not sworn or accompanied by any affidavit or other evidence of indigence. There was therefore no evidence from which the trial court could determine Father's indigence on the motions seeking the

pretrial appointment of counsel. Father did not make any sworn statement of indigence until after the trial court ordered the termination of his parental rights, when he gave notice of his appeal in October 2020 and applied to proceed without payment of costs for the appeal. Father's application to proceed in forma pauperis stated he had not received money from sources such as employment, pensions, gifts, inheritance, or friends and family within the last twelve months and had no cash, money in financial accounts, or property of value. Attached to Father's application to proceed in forma pauperis was a summary of the balance in his inmate account, which never exceeded more than $3.45 between April 2020 and September 2020.

The Texas Supreme Court has addressed whether a parent must file an affidavit of indigence to trigger the process for the mandatory statutory appointment of counsel in state-initiated termination proceedings. *See In re B.C.*, 592 S.W.3d 133, 135–37 (Tex. 2019) (construing TEX. FAM. CODE § 107.013). There, the parent-appellant was unrepresented at the termination hearing, did not appear, and did not file an affidavit of indigence until after the trial court terminated her parental rights. *Id.* at 134–35. Applying the rules of statutory construction, the Court concluded that "[f]iling an affidavit of indigence is a necessary prerequisite to a determination that the parent is indigent" and thus entitled to appointed counsel. *Id.* at 136. The Court reasoned that although a statutory right to the appointment of counsel exists for an "indigent parent" in a state-initiated termination proceeding, a

24

"trial court is not authorized to hold a hearing to determine the indigency status [of a parent] until the parent file[s] an affidavit of indigence with the court." *Id.* (internal quotation omitted); *see* TEX. FAM. CODE § 107.013(d) ("The court shall require a parent who claims indigence . . . to file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court may conduct a hearing to determine the parent's indigence under [section 107.013]."). The Court ultimately affirmed the court of appeals' judgment reversing the termination order on an alternative ground, but it acknowledged the court of appeals' error in imposing on the trial court a duty to "conduct[ ] further inquiry" as to the parent's indigence without the requisite affidavit. *Id.* at 136–17.

This case is not a precise fit for *B.C.*'s holding given this is a private termination and Father contends his right to the appointment of counsel derives from constitutional rather than statutory sources. But we have found no authority that leads us to conclude that proof of indigency was not required in this context. That is, the protections Father seeks to invoke concern due process when litigation to terminate parental rights is commenced against a parent who is unrepresented because of indigence. It seems axiomatic that there must be some evidence of the parent's indigence to support a conclusion that the trial court erred by refusing such protections, and that Father's failure to provide any such evidence is fatal to his

contention on appeal. Accordingly, we cannot hold that the trial court erred by denying Father's request for the appointment of counsel.

We therefore overrule Father's second issue.

## Inability to Attend Hearing

In his third issue, Father complains that illness prevented him from participating in the termination hearing and thus he was unable to present any defense to Mother's allegations. Father asserts that he was recovering from COVID-19 at the time of the termination hearing and, as a result, was "in no shape physically to walk 100 yards to the law library" to attend the hearing via Zoom. We construe this to be a complaint that the trial court erred by failing to postpone the termination hearing due to Father's illness.

The clerk's record contains a docket entry on August 17, 2020, noting that the termination hearing scheduled for that date would be reset because Father had contracted "the corona," was in isolation, and thus was unable to appear at the Zoom set up in the prison law library.[8] That Father contracted COVID-19 and was in quarantine for the August 17 setting is undisputed by Mother. However, Mother did dispute whether Father was still suffering from illness when the hearing was

---

[8] While docket entries may not be used to contradict trial court orders and are generally not considered to be trial court orders or findings, appellate courts may consider them in determining what happened in the trial court. *See Haut v. Green Café Mgmt., Inc.*, 376 S.W.3d 171, 178–79 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

26

conducted more than one month later, on September 23, through her cross-examination of the correctional officer. When asked under oath at the commencement of the September 23 hearing whether he was aware of any physical impairment to Father's attendance, the correctional officer answered in the negative.

Although Father asserts the correctional officer was unqualified to give an opinion on Father's medical or physical condition,[9] the record does not show that Father moved for a continuance of the termination hearing on this or any other basis, or otherwise informed the trial court, orally or in writing, of his alleged inability to attend due to illness, either before or after the termination hearing. That is, there is no written motion for continuance in the clerk's record, no oral motion or other reference to a motion for continuance in the reporter's record, and no record of an order ruling on a motion for continuance of the termination hearing. *See* TEX. R. CIV. P. 251 (instructing that continuance shall not be granted except for "sufficient cause supported by affidavit, or consent of parties, or by operation of law"); *In re C.F.*, 565 S.W.3d 832, 844 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (noting motions for continuance must be in writing, state specific facts supporting motion, and be verified or supported by affidavit). These things were required to preserve error, if any, for appellate review. *See* TEX. R. APP. P. 33.1(a); *First Nat'l Collection*

---

[9]     Father asserts in his brief that the correctional officers told him they would report to the trial court only that he refused to attend trial because they were not trained to determine his medical fitness to appear.

27

*Bureau, Inc. v. Walker*, 348 S.W.3d 329, 337 (Tex. App.—Dallas 2011, pet. denied) ("An objection is timely urged when asserted at either the earliest opportunity or when the error becomes apparent."); *see also In re W.A.B.*, No. 14-18-00181-CV, 2019 WL 2181205, at *2 (Tex. App.—Houston [14th Dist.] May 21, 2019, no pet.) (mem. op.) ("When the record does not show that a motion for continuance was filed and brought to the trial court's attention before final judgment is rendered, any error is not preserved.").

Father is not exempt from compliance with the preservation-of-error requirements. *See In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005) ("[T]he rules governing error preservation must be followed in cases involving termination of parental rights, as in other cases in which a complaint is based on constitutional error."); *In re B.L.D.*, 113 S.W.3d 340, 350–51 (Tex. 2003) (fundamental-error doctrine does not apply to procedural preservation rules, nor does due process require appellate review of unpreserved complaints in all parental rights termination cases); *see also Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) ("[P]ro se litigants are not exempt from the rules of procedure."); *Mansfield State Bank*, 573 S.W.2d at 184–85 ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves."). In short, because the record does not show Father moved for a continuance of the termination hearing

at any time, in writing or orally, or obtained a ruling on a motion for continuance, we conclude Father has failed to preserve his third issue for appellate review.

But even if we were to review the unpreserved error, *see In re B.L.D.*, 113 S.W.3d at 352 (recognizing due process may require review of unpreserved error in some termination cases), our review would be for an abuse of discretion only. *See McAleer v. McAleer*, 394 S.W.3d 613, 616–17 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (noting trial court's "broad discretion to deny or grant a motion for continuance," and that appellate court will not reverse trial court's decision absent clear abuse of discretion). Although we are troubled that the trial court did not make further inquiry into the reason for Father's absence from the termination hearing beyond the correctional officer's testimony that he was unaware of any reason Father could not attend—particularly considering the undisputed fact of Father's COVID-19 diagnosis one month before the setting—the abuse-of-discretion standard does not permit us to substitute our judgment for the trial court's judgment.[10] *See id.* at 617 ("The appellate court may not substitute its judgment for that of the trial court in matters committed to the trial court's discretion.").

---

[10] Were this a case in which Father had not actively participated in the pretrial phase of the termination proceeding, we would be less troubled. Unlike in some cases where a pro se party fails to appear at trial, Father here filed multiple pretrial motions, including motions aimed at the defense of his parental rights. *Cf. Lassiter v. Dep't of Soc. Servs.*, 425 U.S. 18, 33 (1981) (permitting courts to consider parent's demonstration of interest in proceedings in considering due process

Moreover, because the matter was not raised in the trial court, no record that might have supported Father's claim of illness at the time of the termination hearing was developed. Thus, Father's contention that he was too ill to attend the termination hearing rests only on the unsupported assertions in his appellate briefing, which are not sufficient to find a clear abuse of discretion. *See, e.g.*, *In re Marriage of Harrison*, 557 S.W.3d 99, 118 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (concluding trial court did not abuse its discretion in denying pro se litigant's motion for continuance when record did not contain written, verified motion).

We therefore overrule Father's third issue.

### Refusal to Rule

In his fourth issue, Father contends the trial court abused its discretion by failing to rule on his pro se motions. Our review of the record indicates that the trial court did not rule on the following motions filed by Father: (1) motion for speedy trial; (2) motion for bench warrant; (3) motion for funding to hire a private investigator; and (4) motion to subpoena witnesses.[11] But the record does not show

---

requirements). In addition, given Father was pro se, his absence meant no one was present to represent his interests at the hearing.

[11] The other motions filed by Father were his two motions requesting the appointment of counsel, which we addressed above, and a motion to appoint an amicus attorney for the child. The record contains an order appointing an amicus attorney. Although it does not state the appointment was on Father's motion, the relief Father requested was granted and thus we do not consider this motion in our evaluation of Father's contention that the trial court abused its discretion by refusing to rule.

that Father urged the trial court to rule on the motions or objected to the trial court's failure to rule.

To preserve a complaint on appeal concerning a trial court's refusal to rule, the record must show that the party presented the motion to the trial court. *See* TEX. R. APP. P. 33.1(a); *see also In re Blakeney*, 254 S.W.3d 659, 662 (Tex. App.—Texarkana 2008, orig. proceeding). The mere fact that a motion was filed with the court clerk does not constitute proof that the motion was brought to the trial court's attention or presented to the trial court with a request for a ruling. *See Murphree v. Cooper*, No. 14-11-00416-CV, 2012 WL 2312706, at *1 (Tex. App.—Houston [14th Dist.] June 19, 2012, no pet.) (mem. op.); *In re Smith*, 263 S.W.3d 93, 96 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). Further, the record must show that the party objected to the trial court's refusal to rule. *See* TEX. R. APP. P. 33.1(a)(2); *see also Martin v. Com. Metals Co.*, 138 S.W.3d 619, 623 (Tex. App.—Dallas 2004, no pet.) (holding party waived issues in motions by not obtaining ruling on motions or objecting to refusal to rule); *Law Offices of Lin & Assocs. v. Ho*, No. 14-01-01265-CV, 2002 WL 31319191, at *2 (Tex. App.—Houston [14th Dist.] Oct. 17, 2002, pet. denied) (not designated for publication) ("[A]s the record is bare of any trial court ruling on the motion to reconsider or of Lin bringing such failure to rule to the trial court's attention or otherwise object[ing] to the failure to rule, she has therefore not preserved any error for our review.").

31

Again, Father's pro se status does not excuse him from these preservation-of-error requirements. *See Wheeler*, 157 S.W.3d at 444; *Mansfield State Bank*, 573 S.W.2d at 184–85. Because the record does not show that the trial court expressly or implicitly ruled on the motion for expenses or that Father objected to any refusal to rule, we conclude that Father has not preserved his fourth issue for appellate review.

We therefore overrule Father's fourth issue.

**Motion for New Trial**

On November 8, 2021, after the submission date for this appeal, Father filed a separate motion with this Court requesting that we order a new trial on the ground of newly discovered evidence. In the motion, Father asserts that he recently obtained material evidence from an attorney, T. Stickler, which he previously did not have access to and thus was unable to present at the termination hearing. This motion, which was filed in the first instance in this Court more than a year after the trial court's final judgment, is not timely and fails to explain the nature or relevance of the newly discovered evidence. *See* TEX. R. CIV. P. 329b(a) (stating motion for new trial must be filed within 30 days after judgment is signed). With limited exceptions not applicable here, an appellate court may not consider matters outside the appellate record. *See In re M.S.*, 115 S.W.3d at 536 ("[T]his Court—or any appellate court—may only consider the record presented to it."); *Soto v. Pantalion*, No. 01-20-00321-CV, 2021 WL 2931363, at *2 (Tex. App.—Houston [1st Dist.] July 13, 2021, no

32

pet.) (mem. op.) (noting evidence that is not in appellate record is not properly before court); *see also* TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."). A motion for new trial based on newly discovered evidence must first be presented to and ruled on by the trial court, or else nothing is preserved for our review. *See* TEX. R. CIV. P. 324(b)(1) (stating complaint about newly discovered evidence must be raised in motion for new trial to be preserved for appeal); TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection or motion . . . and (2) the trial court [ ] ruled on the request, objection, or motion, either expressly or implicitly[.]"); *see also Cook v. Monaghan Medical Corp.*, No. 01-19-00121-CV, 2020 WL 3422291, at *2 (Tex. App.—Houston [1st Dist.] June 23, 2020, no pet.) (mem. op.) (describing TEX. R. CIV. P. 324(b) as rule focused on preservation of error).

We therefore deny Father's motion for new trial.

## Conclusion

Having overruled all issues raised under a liberal construction of Father's briefing, we affirm the trial court's order terminating Father's parental rights to the child.

Amparo Guerra
Justice

Panel consists of Justices Kelly, Guerra, and Farris.